# FEDERAL TRADE COMMISSION v. A. McLEAN & SON et al.

## Nos. 5796–5799.

Circuit Court of Appeals, Seventh Circuit.
July 1, 1936.

W. T. Kelley, Chief Counsel, Federal Trade Commission, Martin A. Morrison, Asst. Chief Counsel, and Henry C. Lank and James W. Nichol, Sp. Attys., all of Washington, D. C., for petitioner.

Beach, Fathchild & Scofield, of Chicago, Ill. (Irvin H. Fathchild and L. A. Smoler, both of Chicago, Ill., of counsel), for respondents.

Before EVANS and SPARKS, Circuit Judges, and LINDLEY, District Judge.

SPARKS, Circuit Judge.

These are proceedings under section 5 of the Federal Trade Commission Act, 15 U.S.C.A. § 45, for the enforcement of orders issued by the Commission on June 21, 1935. The orders separately require the respective respondents to cease and desist from certain practices found to constitute unfair and forbidden methods of competition. The facts and the questions presented in all of these proceedings are identical, and a consolidated answer and brief of all the respondents was filed. Our discussion will, therefore, be directed to the McLean case as for all. The findings of the Commission [1] closely follow its complaint which

[1] Findings as to the Facts.

"Paragraph One. Respondent, A. McLean and Son, is a corporation organized under the laws of the State of Illinois, with its principal office and place of business in the City of Chi-

was filed December 15, 1934. Aside from the presumption that the findings are supported by competent evidence [National Harness Manufacturers' Ass'n v. Federal Trade Commission (C.C.A.) 261 F. 170, and Federal Trade Commission v. Inecto, Inc. (C.C.A.) 70 F.(2d) 370] we are assured of that fact from an examination of the record. It therefore follows that the findings are conclusive. Federal Trade Commission Act, § 5; Federal Trade Commission v. Winsted Hosiery Co., 258 U.S. 483, 42 S.Ct. 384, 66 L.Ed. 729.

It is contended by the respondents that the facts as found do not support an order to cease and desist. We hold otherwise on the authority of Federal Trade Commission v. R. F. Keppel, 291 U.S. 304, 54 S.Ct. 423, 78 L.Ed. 814; Walter H. Johnson Candy Co. v. Federal Trade Com-

cago, Illinois. Respondent is now and for several years last past, has been engaged in the manufacture of candy in Chicago, Illinois, and in the sale and distribution of said candy to wholesale dealers and jobbers in the State of Illinois and other states of the United States. It causes said candy when sold to be shipped or transported from its principal place of business in the State of Illinois to purchasers thereof in Illinois and in the states of the United States other than the State of Illinois. In so carrying on said business, respondent is and has been engaged in interstate commerce and is and has been in active competition with other corporations and with partnerships and individuals engaged in the manufacture of candy and in the sale and distribution of the same in interstate commerce.

"Paragraph Two. Among the candies manufactured and sold by respondent were several assortments of candy each composed of a number of pieces of candy of uniform size, shape, and quality together with a number of larger pieces of candy or small boxes of candy to be given as prizes to purchasers of said candies of uniform size, shape, and quality in the following manner:

"The majority of the said pieces of candy of uniform size, shape, and quality in said assortments have centers of the same color but a small number of said candies have centers of a different color. The color of the centers of these candies is effectively concealed from the prospective purchasers until a purchase or selection has been made and the candy broken open. The said candies of uniform size, shape, and quality in said assortments retail at one cent each but the purchasers who procure one of the said candies having a center of a different color than the majority of said candies, are entitled to receive and are to be given free of charge one of the said larger pieces or small boxes of candy heretofore referred to. The purchaser of the last piece of candy in said assortment is entitled to receive and is to be given free of charge a larger piece of candy or a small box of candy. The aforesaid purchasers of said candy who procure a candy having a center colored differently from the majority of said pieces of candy thus procure one of the said larger pieces or small boxes of candy wholly by lot or chance.

"Respondent manufactures, sells, and distributes several assortments involving the above lottery or chance feature. The pieces of candy of uniform size, shape, and quality are generally 160 in number but, occasionally, vary a few pieces more or a few pieces less, and the prizes are generally larger prizes of candy or small boxes of candy but occasionally other articles of merchandise are included as prizes, but the principle or sales plan is the same as to each of the said assortments.

"Respondent furnishes to said wholesale dealers and jobbers with said assortments of candy, display cards to be used by retail dealers in offering said candies for sale, which display cards bear a legend or statement informing the prospective purchaser that the said assortments of candies are being sold in accordance with the sales plan above described.

"Paragraph Three. Another assortment which respondent manufactures, sells, and distributes is contained within two boxes, one box having pieces of candy of uniform size, shape, and quality, the majority of which have centers of the same color but a small number of which have centers of a different color. The other box contains larger pieces or boxes of candy and the number of bars is approximately the same as there are pieces of candy with centers colored differently from the majority in the first box above mentioned and the two boxes are so packed that they may be displayed by the retail dealers as a single assortment and the larger pieces or bars of candy are distributed as prizes to purchasers of the small pieces of candy in the same manner as where they are packed in the same assortment and as described in Paragraph Two herein. Larger pieces or bars of candy are thus distributed to the purchasing public wholly by lot or chance and the respond-

mission (C.C.A.) 78 F.(2d) 717; and Hofeller v. Federal Trade Commission (C.C.A.) 82 F.(2d) 647. Many questions of fact and law are raised by respondents, but most of them were decided adversely to respondents' contentions in the cases just cited. They contend that section 5 of the act violates the federal constitutional mandate of separation of governmental functions (article 1, § 1; art. 2, § 1; art. 3, § 1), and the due process clause (Amendment 5). We think there is no merit in this contention. Sears, Roebuck & Co. v. Federal Trade Commission (C.C.A.) 258 F. 307, 6 A.L.R. 358; National Harness Mfrs.' Ass'n v. Federal Trade Commission (C.C.A.) 268 F. 705; Arkansas Wholesale Grocers' Ass'n v. Federal Trade Commission (C.C.A.) 18 F.(2d) 866; Federal Trade Commission v. Balme (C.C.A.) 23 F.(2d) 615. See, also, the concurring opinion of Mr. Justice Cardozo in Schechter Poultry Corp. v. United States, 295 U.S. 495, at page 552, 55 S.Ct. 837, 79 L.Ed. 1570, 97 A.L.R. 947.

It is further contended by certain of the respondents that the court failed to find that they had discontinued the manufacture

---

ent in so packing said assortment knows that the same may and will be used as a lottery or chance assortment when sold by the retail dealer.

"Paragraph Four. The lottery, prize, or draw packages described in Paragraphs Two and Three above are generally referred to in the candy trade or industry as 'Break and Take', or 'Draw' packages. The packages or assortments of candy without the lottery, prize, or draw features in connection with their resale to the public are generally referred to in the candy trade or industry as 'Straight Goods.' These terms will be used hereafter in these findings to describe these respective types of candy.

"Paragraph Five. Numerous retail dealers purchase the assortments described in Paragraphs Two and Three above, from wholesale dealers or jobbers who in turn have purchased said packages from respondent and such retail dealers display said assortments for sale to the public as packed by the respondent and the candy contained in said assortment is sold and distributed to the consuming public by lot or chance.

"Paragraph Six. All sales made by respondent are absolute sales and respondent retains no control over the goods after they are delivered to the wholesale dealer or jobber. The assortments are assembled and packed in such manner that they can be displayed by the retail dealer for sale and distribution to the purchasing public, as above described, without alteration or rearrangement. * * * Said assortments can not be resold to the public by the retail dealers except as a lottery or gaming device, unless said retail dealers unwrap, unpack, disassemble, or rearrange the said assortments.

"In the sale and distribution to jobbers and wholesale dealers for resale to retail dealers, of assortments of candy, assembled and packed as described in Paragraphs Two and Three herein, respondent has knowledge that said candy will be resold to the purchasing public by retail dealers, by lot or chance and it packs and assembles such candy in the way and manner described so that it may and shall be resold to the public by lot or chance by said retail dealers.

"Paragraph Seven. The sale and distribution of candy by the retail dealers by the methods described in these findings, is the sale and distribution of candy by lot or chance and constitutes a lottery or gaming device. * * *

" * * * Many competitors regard such method of sale and distribution as morally bad and encouraging gambling, especially among children; as injurious to the candy industry, because it results in the merchandising of a chance or lottery instead of candy; and as providing retail merchants with the means of violating the laws of the several states. Because of these reasons some competitors of respondent refuse to sell candy so packed and assembled that it can be resold to the public by lot or chance. These competitors are thereby put to a disadvantage in competing. Certain retailers who find that they can dispose of more candy by the 'Break and Take' or 'Draw' methods, buy respondent's products and the products of others employing the same methods of sale, and thereby trade is diverted to respondent, and others using similar methods, from said competitors. Said competitors can compete on even terms only by giving the same or similar devices to retailers. This they are unwilling to do, and their sales of 'Straight Goods' candy show a continued decrease.

"There is a constant demand for candy which is sold by lot or chance, and in order to meet the competition of manufacturers who sell and distribute candy which is sold by such methods, some competitors of respondent have begun the sale and distribution of candy for resale to the public by lot or chance. The use of such methods by respondent in the sale and distribution of its candy

and sale of the chance assortments on August 1, 1934. Discontinuance or abandonment is no defense to the order, for, if true, it would be no guaranty that the challenged acts will not be renewed. Federal Trade Commission v. Wallace (C.C.A.) 75 F.(2d) 733. The benefit to respondents of an abandonment may be fully protected by their report to the Commissioner as required by the Commission's order.

■ Respondents further contend that the orders of the Commission seek to control the method of retail sale of candies in intrastate commerce, and for that reason they, together with the Act under which they were promulgated, are invalid under the ruling in the Schechter Case. The orders, however, are expressly limited to interstate commerce and they do not apply to any intrastate business in which any of the respondents may be engaged.

■ We are convinced, however, that paragraphs (1) and (2) of the cease and desist order are too broad in that they prevent the sale and distribution to jobbers and wholesalers for resale to retailers of any candy so packed and assembled that retail sales may be made by means of a lottery, or gaming device. This clearly would prevent the sale of any candy which might

is prejudicial and injurious to the public and its competitors, and has resulted in the diversion of trade to respondent from its said competitors, and is a restraint upon a detriment to the freedom of fair and legitimate competition in the candy industry.

"Paragraph Eight. The principal demand in the trade for the 'Break and Take' or 'Draw' candy comes from the small retailers. The stores of these small retailers are in many instances located near schools and attract the trade of the school children. The consumers or purchasers of the lottery or prize package candy are principally children, and because of the lottery or gambling feature connected with the 'Break and Take, or 'Draw' package, and the possibility of becoming a winner, it has been observed that the children purchase them in preference to the 'Straight Goods' candy when the two types of packages are displayed side by side.

" * * * Children prefer to purchase the lottery or prize package candy because of the gambling feature connected with its sale. The sale and distribution of 'Break and Take' or 'Draw' packages or assortments of candy or of candy which has connected with its sale to the public the means or opportunity of obtaining a prize or becoming a winner by lot or chance, teaches and encourages gambling among children, who comprise by far the largest class of purchasers and consumers of this type of candy.

"Paragraph Nine. The pieces of candy in the 'Break and Take' or 'Draw' packages of all manufacturers of that type of candy are either smaller in size than the corresponding pieces of 'Straight Goods' candy or the quality of the candy in the 'Break and Take' or 'Draw' packages is poorer than that in the 'Straight Goods' assortments. It is necessary to make this difference between either the size of the individual pieces of candy or the quality of the candy in order to compensate for the value of the prizes of premiums which are distributed with the 'Break and Take' or 'Draw' goods.

"Paragraph Ten. There are in the United States many manufacturers of candy who do not manufacture and sell lottery or prize assortments of candy and who sell their 'Straight Goods' candy in interstate commerce in competition with the 'Break and Take' or 'Draw' candy, and manufacturers of the 'Straight Goods' type of candy have noted a marked decrease in the sales of their products whenever and wherever the lottery or prize candy has appeared in their markets. This decrease in the sales of 'Straight Goods' candy is principally due to the gambling or lottery feature indicated with the 'Break and Take' or 'Draw' candy.

"Paragraph Eleven. In addition to the assortments described in Paragraphs Two and Three herein, the respondent manufactures candy which it sells to wholesalers and jobbers without any lottery or chance features.

"Paragraph Twelve. The sale and distribution of candy by lot or chance is against the public policy of many of the states of the United States and some of said states have laws making the operation of lotteries and gambling devices penal offenses."

### Conclusion

"The aforesaid acts and practices of respondent, A. McLean and Son, under the conditions and circumstances set forth in the foregoing findings of fact are all to the prejudice of the public and respondent's competitors and constitute unfair methods of competition in commerce and constitute violations of Section 5 of an Act of Congress, approved September 26, 1914, entitled 'An Act to Create a Federal Trade Commission, to define its powers and duties and for other purposes.'"

afterwards be sold by the retailer by means of a lottery, gaming device or gift enterprise. Obviously, this was not the intention of Congress, and we think it was not the intention of the Commission. We have therefore stricken the word "may" from paragraphs (1) and (2) of the orders and substituted the words "are designed to," and as thus modified, the orders of the Commission [2] are affirmed, and respondents, their officers, directors, agents, representatives and employees are hereby ordered to comply therewith.

## UNITED STATES v. CHICAGO GOLF CLUB.

### No. 5643.

Circuit Court of Appeals, Seventh Circuit. June 22, 1936.

[2] (1) Selling and distributing to jobbers and wholesale dealers, for resale to retail dealers, candy so packed and assembled that sales of such candy to the general public are to be made or are designed to be made by means of a lottery, gaming device, or gift enterprise.

(2) Supplying to, or placing in the hands of, wholesale dealers and jobbers packages or assortments of candy which are used or are designed to be used without alteration or rearrangement of the contents of such packages or assortments, to conduct a lottery, gaming device, or gift enterprise in the sale or distribution of the candy or candy products contained in said assortment to the public.

(3) Packing or assembling in the same package or assortment of candy, for sale to the public at retail, pieces of candy of uniform size, shape, and quality, having centers of a different color, together with larger pieces of candy, or small boxes of candy, or other articles of merchandise, which said larger pieces of candy, or small boxes of candy, or other articles of merchandise are to be given as prizes to the purchaser procuring a piece of candy with a center of a particular color.

(4) Furnishing, to wholesale dealers and jobbers, display cards, either with assortments of candy or candy products, or separately, bearing a legend or legends or statements informing the purchaser that the candy or candy products are being sold to the public by lot or chance or in accordance with a sales plan which constitutes a lottery, gaming device, or gift enterprise.

(5) Furnishing to wholesale dealers and jobbers display cards or other printed matter for use in connection with the sale of candy or candy products, which said advertising literature informs the purchasing public that upon the obtaining by the ultimate purchaser of a piece of candy of a particular colored center, a larger piece of candy or small box of candy or another article of merchandise will be given free to said purchaser.

It is further ordered that respondents within thirty (30) days after the service upon them of this order, shall file with the Commission a report in writing setting forth in detail the manner and form in which they have complied with the order to cease and desist hereinabove set forth.

And it is hereby further ordered by reason of the decision of the Supreme

Frank J. Wideman and Robert H. Jackson, Asst. Attys. Gen., Sewall Key, Norman D. Keller, and Warren F. Wattles, Sp. Assts. to Atty. Gen., Michael L. Igoe, U. S. Atty., of Chicago, Ill., and Maurice J. Mahoney, of Washington, D. C., for the United States.

Ernest C. Reniff, of Chicago, Ill., for appellee.

Before EVANS and SPARKS, Circuit Judges, and BALTZELL, District Judge.

Court of the United States in A. L. A. Schechter Poultry Corporation v. United States of America, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570, 97 A.L.R. 947, decided May 27, 1935, Count Two of the complaint in this proceeding be, and the same hereby is, dismissed.