## HELEN ARDELLE, Inc., et al. v. FEDERAL TRADE COMMISSION.

### No. 8842.

Circuit Court of Appeals, Ninth Circuit.

Feb. 14, 1939.

Flood, Lenihan & Ivers, of Seattle, Wash., for petitioners.

W. T. Kelley, Chief Counsel, Federal Trade Commission, Martin A. Morrison, Asst. Chief Counsel, and P. C. Kolinski, James W. Nichol, and Daniel J. Murphy, Sp. Attys., all of the Federal Trade Commission, all of Washington, D. C., for respondent.

Before DENMAN, MATHEWS, and HEALY, Circuit Judges.

MATHEWS, Circuit Judge.

Five Washington corporations—Helen Ardelle, Incorporated, Brown & Haley, Canterbury Candy Makers, Incorporated. Imperial Candy Company and Rogers Candy Company—have petitioned this court to review and set aside orders of the Federal Trade Commission requiring them to cease and desist from certain practices which, the Commission holds, constitute an unfair method of competition in commerce, within the meaning of § 5 of the Federal Trade Commission Act, 38 Stat. 719, 15 U.S.C.A. § 45.

Facts found by the Commission and not disputed by petitioners are as follows:

Petitioners are engaged in the manufacture of candy in the State of Washington and in the sale and distribution thereof in interstate commerce. They have many competitors similarly engaged. Peti-

tioners sell and distribute to retail dealers, and to wholesale dealers who sell and distribute to retail dealers, assortments of candy, called "draw" or "deal" assortments, each containing several boxes of candy, and, with each assortment, a device called a punchboard, by means of which the retail dealer sells and distributes such candy to the general public.

This punchboard is, as its name indicates, a board designed to be punched. For the privilege of punching it, the retail dealer receives from his customers 5 cents a punch. Each punch of the board discloses a number which, until then, is concealed. The numbers are not arranged in numerical sequence. Thus, each customer punching the board "draws" a number. The customer purchasing the last punch on the board receives, regardless of the number drawn by him, one of the boxes of candy in the assortment accompanying the board. The other boxes of candy are awarded to customers drawing certain lucky numbers. These are designated on a legend or statement attached to the board. All other numbers are, in effect, blanks. Customers drawing them receive nothing. The blanks are many, the lucky numbers few. Each box of candy is worth more than 5 cents. Thus, an occasional customer gets, for 5 cents, a box of candy worth considerably more. Others get nothing except the privilege of punching the board.

This, obviously, is a lottery or gambling device.

■ All sales of candy by petitioners, whether to wholesale or to retail dealers, are outright sales, petitioners retaining no control over such candy after delivering it to the dealer. Petitioners, however, in making such sales, know that the candy will be, and intend that it shall be, sold to the public by means of punchboards, as above described. They accordingly pack and assemble the candy in "draw" or "deal" assortments, so that it may be so sold without alteration or rearrangement. They also furnish with each assortment a punchboard and, attached to it, a legend or statement explaining its use. Thus, knowingly and purposely, petititioners cause and procure their candy to be sold and distributed to the public by means of a lottery or gambling device.

Petitioners have many competitors who will not and do not use, or cause or procure others to use, any lottery or gambling device. The Commission found, upon ample evidence, that such competitors are placed at a disadvantage in competing with petitioners, in that, because of the element of chance involved, many customers are attracted by the punchboard method of selling candy and are thereby induced to purchase petitioners', instead of their competitors' candy. Thus, by the use of a lottery or gambling device, petitioners are able to, and do, compete successfully with those who will not and do not use this method of competition.

■ That such a method of competition is unfair, within the meaning of § 5 of the Federal Trade Commission Act, is well settled. Federal Trade Commission v. R. F. Keppel & Bro., 291 U.S. 304, 309, 54 S.Ct. 423, 78 L.Ed. 814; Walter H. Johnson Candy Co. v. Federal Trade Commission, 7 Cir., 78 F.2d 717; Hofeller v. Federal Trade Commission, 7 Cir., 82 F.2d 647, 649; Federal Trade Commission v. Southern Premium Mfg. Co., 5 Cir., 83 F.2d 1008; Federal Trade Commission v. A. McLean & Son, 7 Cir., 84 F.2d 910; Federal Trade Commission v. E. A. Martoccio Co., 8 Cir., 87 F.2d 561, 563; Federal Trade Commission v. George Ziegler Co., 7 Cir., 90 F.2d 1007; Federal Trade Commission v. Barager-Webster Co., 7 Cir., 95 F.2d 1000; Federal Trade Commission v. Charles N. Miller Co., 1 Cir., 97 F.2d 563; Federal Trade Commission v. American Candy Co., 7 Cir., 97 F.2d 1001.

That petitioners are using this method, and using it as a method of competition in interstate commerce, is not disputed. They nevertheless ask us to set aside the Commission's orders, on the ground that its conclusion—which they call a finding—that the method is unfair is not supported by testimony. Petitioners' brief states:

"Petitioners contended before the Commission and now contend before this court that the record in these cases wholly fails to sustain the finding of the Commission that this 'punchboard' method of distribution is considered to be an unfair method of competition in the Pacific Northwest, the area in which these petitioners conduct their business. The Commission in these cases failed to produce a single witness who was actually or even potentially a competitor of these petitioners who did or would testify that the method of distribution used by the petitioners is considered to be an unfair method of competition."

Hence, it is argued, "the finding of the Commission that the 'punchboard' method of candy distribution in the Pacific Northwest constitutes an unfair method of competition within the meaning of § 5 of the Federal Trade Commission Act cannot be sustained."

■ The argument assumes erroneously, that whether petitioners' method of competition—which admittedly, involves the use of a lottery or gambling device—is fair or unfair is a question of fact to be determined by testimony. Actually, it is a question of law to be determined by the courts. Federal Trade Commission v. Gratz, 253 U.S. 421, 427, 40 S.Ct. 572, 64 L.Ed. 993; Federal Trade Commission v. Beech-Nut Packing Co., 257 U.S. 441, 453, 42 S.Ct. 150, 66 L.Ed. 307, 19 A.L.R. 882; Federal Trade Commission v. Curtis Publishing Co., 260 U.S. 568, 579, 43 S.Ct. 210, 67 L.Ed. 408; Federal Trade Commission v. Raladam Co., 283 U.S. 643, 648, 51 S.Ct. 587, 75 L.Ed. 1324, 79 A.L.R. 1191; Federal Trade Commission v. R. F. Keppel & Bro., supra, page 314, 54 S.Ct. 423. Testimony of witnesses as to how, in their opinion, the question should be determined would be useless and improper. The Supreme Court has, in the Keppel case, declared the law on this subject, not for one State or one Circuit only, but for the entire United States, including the Pacific Northwest.

As stated before, petitioners pack their candy in boxes. They call these boxes fancy packages. They also call their candy fancy package candy, and call their business the fancy package candy business. They say in their brief that there is no testimony that anyone engaged in the fancy package candy business is injured by their use of the punchboard method of selling and distributing candy. Hence, they contend, the Commission's finding that their use of this method injures their competitors is not supported by testimony. The contention is based on the false assumption that petitioners are in competition only with those who sell and distribute candy in fancy packages. There is abundant testimony that sales of petitioners' candy by the punchboard method are in competition with, and subtract from, "straight" sales of other candy. Whether such candy is sold in fancy packages, plain boxes, tinfoil wrappers or paper bags is quite immaterial.

Sales of petitioners' candy by the punchboard method exceed, in the aggregate, $250,000—five million punches—a year. Here, as in the Keppel case, supra (page 309, 54 S.Ct. 423), the practices complained of affect not only competing manufacturers, but the far greater number of wholesalers and retailers to whom the manufacturers sell, and the customers to whom the retailers sell. It is clear, therefore, that the present proceeding is not a mere private controversy, but is, as § 5 of the Act requires, "to the interest of the public."

Each of the five orders under review reads as follows:

"It is ordered that the [petitioner], its officers, representatives, agents, and employees, in connection with the offering for sale, sale and distribution in interstate commerce of candy, do forthwith cease and desist from:

"(1) Selling and distributing to jobbers and wholesale dealers for resale to retail dealers, or to retail dealers direct, candy so packed and assembled that sales of such candy to the general public are to be made, or may be made, by means of a lottery, gaming device, or gift enterprise.

"(2) Supplying to or placing in the hands of wholesale dealers and jobbers or retail dealers assortments of candy which are used, or which may be used, without alteration or rearrangement of the contents of such assortments, to conduct a lottery, gaming device, or gift enterprise in the sale or distribution of the candy contained in said assortments to the public.

"(3) Packing or assembling in the same assortment of candy for sale to the public at retail boxes of candy, together with a device commonly called a 'punchboard,' which punchboard is for use, or which may be or is designed to be used, in distributing or selling said candy to the public at retail.

"(4) Furnishing to retail and wholesale dealers and jobbers a device commonly called a 'punchboard,' either with assortments of candy or separately, bearing a legend or legends or statements informing the purchasing public that the candy is being sold to the public by lot or chance or in accordance with a sales plan which constitutes a lottery, gaming device, or gift enterprise."

■ Petitioners contend that paragraphs (1) and (2) of each order are too broad,

in that they relate not only to sales which are to be made by means of a lottery, gaming device or gift enterprise, but to those which "may be" so made, and relate not only to assortments of candy which are to be used in conducting a lottery, gaming device or gift enterprise, but to those which "may be" so used. This point is well taken. The orders, as drawn, would prevent petitioners from selling any candy which any person might thereafter sell by means of a lottery, gaming device or gift enterprise, or might thereafter use in conducting a lottery, gaming device or gift enterprise, even though such sale or use was not designed, intended, caused, procured or consented to by petitioners. This, obviously, was not the intention of Congress. Federal Trade Commission v. A. McLean & Son, supra, page 913; Federal Trade Commission v. Charles N. Miller Co., supra, page 564.

The orders are modified by striking out the words "or may be made," in paragraph (1) of each order, and by amending paragraph (2) of each order to read as follows:

"(2) Supplying to or placing in the hands of wholesale dealers and jobbers or retail dealers assortments of candy whose contents are arranged to conduct a lottery, gaming device, or gift enterprise in the sale or distribution of the candy contained in said assortments to the public."

As thus modified, the orders are affirmed.