**NATIONAL CANDY CO. v. FEDERAL TRADE COMMISSION.**

**MARCH OF TIME CANDIES, Inc., v. SAME.**

**DIETZ GUM CO. et al. v. SAME.**
Nos. 6642, 6647, 6648.

Circuit Court of Appeals, Seventh Circuit.
June 2, 1939.

Rehearing Denied July 11, 1939.

Abraham Lowenhaupt, of St. Louis, Mo. (Irvin H. Fathchild, of Chicago, Ill., of counsel), for petitioners.

W. T. Kelley, Chief Counsel, Federal Trade Commission, Martin A. Morrison, Asst. Chief Counsel, and P. C. Kolinski and James W. Nichol, Sp. Attys., all of Washington, D. C., for respondent.

Before SPARKS, TREANOR, and KERNER, Circuit Judges.

SPARKS, Circuit Judge.

On motion of the parties, cause No. 6647, March of Time Candies, Inc., v. Federal Trade Commission; and No. 6648, Dietz Gum Company of Chicago, et al. v. Federal Trade Commission, were consolidated for hearing in this court, because the

general subject matter in all of the cases is the same. The last two cases were considered upon the briefs submitted in the National Candy case, and we were requested to decide the last two cases in accordance with our disposition of the first. In our discussion, therefore, we shall refer to petitioner as the National Candy Company.

By this action petitioner seeks to review a cease and desist order issued by the Federal Trade Commission under 15 U.S.C.A. § 45. The order was based upon what is termed an amended and supplemental complaint issued by the Commission on April 22, 1937, which in substance contained the following allegations: The petitioner is a New Jersey corporation with its principal office and place of business in Saint Louis, and having another place of business and factories in Chicago. For several years last past it has engaged in the manufacture of candies and in the sale and distribution thereof to wholesale dealers and jobbers and to retail dealers located in various States of the United States. It causes its products when sold to be transported from Chicago to purchasers in other States of the Union to their respective places of business. During that time, and now, there is a course of trade and commerce by the petitioner in such candy between and among the States of the Union. In the conduct of this business, petitioner is in competition with other corporations, individuals and partnerships engaged in the sale and distribution of candy in commerce between and among the various States. In the conduct of this business, petitioner sells and has sold to wholesale dealers and jobbers and to retail dealers, assortments of candy so packed and assembled as to involve the use of a lottery scheme where sold and distributed to the consumers thereof.

One of the assortments thus sold is composed of a number of pieces of chocolate-covered candy, together with certain other articles of merchandise, which articles are to be given as prizes to purchasers of the candy, in the following manner: The pieces of candy are of uniform size and shape and the majority of them have centers of the same color. A small number of them have centers of a different color, and retail at a price of two for one cent. The purchaser who procures one of the candies having a center of a color different from the majority is entitled to receive, and is to be given free of charge, one of the articles of merchandise. The purchaser of the last piece of candy is likewise entitled to receive, and to be given free of charge, one of the articles of merchandise. The color of the center of each piece of candy is effectively concealed from the purchasers until a selection has been made and the piece of candy broken open. Thus the winners procure the articles of merchandise wholly by chance. With such assortment the petitioner furnishes to the wholesale dealers and jobbers and retail dealers a display card to be used by the retailer in offering the candies for sale to the public, which card bears a legend or statement informing the prospective purchasers that the candy is being displayed in accordance with the above plan.

Another assortment thus manufactured and displayed by petitioner is composed of a number of chocolate-covered candy malted milk balls, together with a device known as a "pushboard," by means of which the candy in this assortment is displayed to the consuming public in the following manner: The pushcard has a number of partially perforated disks which are arranged in four sections. Concealed within each of the disks is a legend. Each sale is for one cent, and the card has statements or legends at the top, stating that certain specified legends entitle the purchaser to one ball. Certain other specified legends entitle the purchaser to two balls; others respectively to three, five, six, eight, ten, and twenty balls. The card also bears the legend that the last play in each of the three sections completed receives five balls. The last play on the card receives fifteen balls. The legends in the perforated disks are effectively concealed from purchasers until the selection has been made and the disk is separated from the card. The fact as to what number of balls a purchaser receives is thus determined wholly by chance.

The wholesale dealers and jobbers to whom petitioner sells its assortments resells the same to retail dealers and they, as well as those retail dealers who purchase directly from petitioner, offer the same for sale and sell them to the public by means of the plans referred to, thus placing in the hands of others the means of conducting lotteries in the sale of these products. Such plans have the tendency and capacity of inducing purchasers to purchase petitioner's candy in preference to that offered for sale and sold by petitioner's competitors.

Petitioner's use of such methods is a practice of the sort which the common law and criminal statutes have long deemed contrary to public policy, and is contrary to the public policy of the Federal Government. The use of such methods has a tendency to hinder competition and create monopoly in trade and to exclude therefrom such competitors who do not adopt, or do not choose to adopt the use of the same or an equivalent method.

Many dealers and ultimate purchasers of candy are attracted by these methods and by the element of chance involved therein, and they are thereby induced to purchase petitioner's candy in preference to that offered for sale and sold by petitioner's competitors who do not use the same or equivalent methods.

Petitioner's use of these methods has the tendency and capacity, because of the element of chance, to divert trade to petitioner from its competitors who do not use such methods; to exclude such competitors from such trade; to restrain competition and create monopoly in such trade; to deprive the public of the benefit of other competition therein; and to exclude therefrom actual and potential competitors who do not adopt and use the same or equivalent methods.

The petitioner's methods, acts and purchases, as referred to, are to the prejudice of the public and of petitioner's competitors, and constitute unfair methods of competition in commerce within the intent and meaning of section 5 of the Federal Trade Commission Act.

On January 19, 1938, by permission of the Commission, the petitioner who was the respondent below, withdrew its answer theretofore filed, and substituted therefor and filed its amended answer dated June 18, 1937,[1] in which it failed to deny any allegation of the complaint, and expressly admitted all material allegations thereof, and it consented to the issuance of an order to cease and desist.

The Commission's findings of fact specifically cover every fact alleged in the complaint, and are within the issues tendered by the complaint. Rule VII of the Commission's Rules of Practice provides that the respondent shall specifically admit or deny or explain each of the facts alleged in the complaint, unless respondent is without knowledge, in which case respondent shall so state. The petitioner's failure to deny, and its express admission of the allegations of the complaint authorized and warranted the findings by the Commission of all the facts alleged. Under this rule it has been held that where an alleged fact is left without denial, any issue with respect to such allegation is foreclosed by the pleadings. Federal Trade Commission v. Standard Education Society, 2 Cir., 86 F. 2d 692. Aside from rule VII, any allegation of the complaint which is not denied is to be taken as true without evidence or finding. Deputron v. Young, 134 U.S. 241, 10 S.Ct. 539, 33 L.Ed. 923; Swift & Company v. United States, 276 U.S. 311, 48 S. Ct. 311, 72 L.Ed. 587.

It is contended by petitioner that because of the competitive situation in the industry, it will be prejudicially discriminatory against it under the due process clause, to permit the order to become operative against it. For this reason it urges that the order should be vacated. This contention is based on the assertion that practically all candy manufacturers have for many years used, and now use, the same methods of competition as does the petitioner. It concedes the Commission's jurisdiction but questions the propriety of the proceeding in the particular record, and under the law as it has been modified, since the order was entered, by the Amendatory Act of March 21, 1938, 52 Stat. 111, 15 U.S.C.A. § 45. Petitioner's contention is that the amendment of section 5 of the Act transformed the Commission's previous administrative quasi-judicial order into a legislative regulation of the candy in-

---

[1] "Comes now the respondent, National Candy Company, Inc., and requests permission to withdraw its answer heretofore filed on May 13, 1937, and to substitute therefor this its amended answer to the Commission's complaint issued herein on April 22, 1937, and states that it desires to and hereby waives hearings on the charges set forth in the complaint herein; that it admits all of the material allegations of the complaint to be true save and except it states that it has not since April 2nd, 1934 sold or shipped in interstate commerce the assortment described in paragraph Two (a) of the complaint; that it consents that the Commission, without hearing, without further evidence, and without other intervening procedure, may make, enter, issue and serve upon it, its findings as to the facts and conclusion based thereon, and an order to cease and desist from the methods of competition alleged in the complaint."

terest trade; and that, as legislation it is void for unconstitutional discrimination against petitioner as between it and its competitors against whom no such order has been made. It is settled that the Commission is a quasi-judicial tribunal and its orders are administrative orders as distinguished from judicial decrees. Schechter Poultry Corp. v. United States, 295 U. S. 495, 55 S.Ct. 837, 79 L.Ed. 1570, 97 A.L.R. 947; Humphrey's ·Executor v. United States, 295 U.S.· 602, 55 S.Ct. 869, 79 L.Ed. 1611; Sears, Roebuck & Co. v. Federal Trade Commission, 7 Cir., 258 F. 307, 6 A.L.R. 358. Prior to the Amendatory Act, the Commission had power to file in this court a petition for the enforcement of its order to cease and desist, and the other party had power to file a petition for a decree setting such order aside. This remedy of the Commission was eliminated by the amendment, and the petitioner's right to file a petition to set aside the order is left precisely as it was in the original enactment, except that the amendment fixed a limit of sixty days on the petitioner's right to exercise its power to file such petition. The pending petition was duly filed within the time.

Under the amendment, if the respondent fails to file a petition to set aside the order within sixty days, the Department of Justice is given power in the case of the violation of such order, to institute a suit to recover from such respondent a civil penalty in the sum of not more than $5,000. In other words, the power to enforce is transferred from the Commission to the Department of Justice, and jurisdiction of such proceeding is ·transferred from the Circuit Court of Appeals to the United States District Courts.·

■ We think the order attacked is not legislative in its character, and that if it were it would not be discriminatory because the statute and all orders thereunder apply equally to all persons in like conditions. The equal protection clause means that the rights of all persons must rest upon the same rule under similar circumstances. Louisville Gas & Elec. Co. v. Coleman, 277 U.S. 32, 48 S.Ct. 423, 72 L.Ed. 770. The amendment did not transform the Commission's order into a legislative act. It merely changed the Government's remedy for its ·enforcement. Cf. Crane v. Hahlo, 258 U.S. 142, 42 S.Ct. 214, 66· L.Ed. 514; So far as this court is concerned, the constitutionality of section 5 of the original Act has been determined. Federal Trade Commission v. A. McLean & Son, 7 Cir., 84 F.2d 910. The provision for a judicial review of an administrative order constitutes due process of law (Bourjois, Inc. v. Chapman, 301 U.S. 183, 57 S.Ct. 691, 81 L.Ed. 1027), and we are convinced that section 5, as amended does not offend the due process clause.

■ Petitioner further urges that it would be prejudicially discriminatory against it to permit the order to become operative because its competitors use the same methods. In other words, it argues that unless the Government proceeds against all such offenders at one time, it would be wrong to proceed against it alone. There is no merit in this contention. Federal Trade Commission v. Winsted Hosiery Co., 258 U.S. 483, 42 S.Ct. 384, 66 L.Ed. 729; Federal Trade Commission v. R. F. Keppel & Bro., 291 U.S. 304, 54 S.Ct. 423, 78 L.Ed. 814.

■ Petitioner also contends that the order must rest upon a complaint which alleges and finds a set of facts within the jurisdiction of the Commission, and it urges that the facts here alleged and found did not disclose that petitioner has shipped any of the products in question in interstate commerce. For this reason it urges that the order should be vacated. A perusal of the complaint and findings, which are practically identical, discloses that such allegations and findings are present. Since the allegations of the complaint are expressly admitted, such admission is unimpeachable now.

Petitioner further calls to our attention the fact that at the time it filed its amended and substituted answer on January 19, 1938, it suggested that the Commission should hold it until it was in a position to issue some restraining orders against at least the most substantial of respondent's competitors. It is not claimed that this was agreed to by the Commission, in fact it was not agreed to and the order complained of was entered with petitioner's knowledge within three days after the amended answer was filed. This suggestion does not add any support to petitioner's contention.

Petitioner's next contention is that the complaint does not allege, and the findings do not determine, that the petitioner's products are deceptive or otherwise injurious to the consumer. In connection with this contention, it further urges that the

asserted jurisdiction upon grounds of public policy is not supported by the decisions bearing upon this subject matter. It will be noted that these contentions do not purport to challenge the jurisdiction of the Commission over the subject matter of the complaint.

■■ If petitioner may rightfully challenge the sufficiency in law of the complaint, still we think that there is no issue presented in these respects. The complaint does not allege that petitioner's products are deceptive or otherwise injurious to the consumer, but it does allege the sale of candy and punchboards intended to be used in the resale of the candy by the use of a lottery scheme or game of chance. This being true, the element of chance which is admitted, is as sound a basis for complaint as deception would be. Federal Trade Commission v. R. F. Keppel & Bro., supra. Under the ruling of that case, we think there is no error with respect to this issue and that the Commission's jurisdiction upon grounds of public policy is complete. It is urged, however, in this respect that the decision of Erie R. R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, nullifies the decision in the Keppel case. With this conclusion we cannot concur. The Erie case merely holds that in determining the law of a State, the Federal courts are to be governed by the decision of the highest courts of such State. In the instant case, however, this court has no occasion to determine or apply any State law because the Commission's order is not based upon any State law.

It is further contended by petitioner that the order is not properly restricted to shipments in interstate commerce. A perusal of the order discloses quite clearly that it is properly restricted to shipments in interstate commerce and the contention is denied. It is fair to say that this contention is based upon petitioner's objection to the words "in connection with the offering for sale and distribution of candy in interstate commerce." From this language petitioner anticipates a construction of it which will be held to apply to intrastate sales of chance candy, and it insists that the words "in connection with" should be stricken out of the order. To do so might leave the petitioner free to sell candy at one price on one contract, and at the same time enter a separate contract and sell the punchboard to be used in the resale of the candy. Such modification would obviously defeat the intention of Congress and provide a way of defeating the purpose of the enactment. We are convinced that the Commission's order cannot be rationally construed to interfere with intrastate commerce.

It is further contended by petitioner that the order is too broad in that it purports to prohibit the shipment of candy which may be sold or distributed upon a chance basis and, as such, is in conflict with an earlier decision of this court, Federal Trade Commission v. A. McLean & Son, 7 Cir., 84 F.2d 910. There we concluded that the language of the order was sufficiently broad to apply to straight candy to be sold by the several respondents, and we accordingly struck the word "may" from paragraph one and two of the order, which is identical with the order here involved, and substituted therefor the words "are designed to." In that case, and here, counsel for the Commission did not deny that straight candy sold to a retailer might be resold by him for use in a game of chance, but it did deny that it was, and is now, legally possible for the words of the original order to be construed to include sales of straight candy.

This particular question had but scant attention in the argument of that case, and there was not presented to this court the authorities upon which the Commission based its opinion that the words of the original order could not be construed to apply to straight candy. The Commission filed no petition for a rehearing nor did it ask for a writ of certiorari. It now presents authorities in support of its construction of the present order and urges us to approve the present order on the theory that it cannot reasonably be construed to apply to the sale and distribution of straight candy, that is to say, to candy that is not "so packed and assembled that sales of such candy to the general public are to be made or may be made by means of a lottery, gaming device, or gift enterprise."

We deem this suggestion worthy of consideration in view of the fact that the development of plans calculated to evade the intent of the statute, as illustrated by those here presented, convinces us that the substitution we made in the McLean case lacks effectiveness in carrying out the intention of Congress. A further consideration convinces us that the language of the order in the light of the allegations of the

complaint and findings of the Commission cannot reasonably be construed to be applied to the sale of "straight" candy. Regardless of the substitution made by us in the McLean case, we affirm the order of the Commission as here presented. We regard it as inapplicable to "straight" candy or to any candy that does not carry an unfair appeal to retail dealers and retail purchasers because of the element of chance involved in the sale thereof. We had no intention of holding otherwise in the McLean case.

 It is further contended by petitioner that its "admissions of answer did not waive insufficiency and constitutional error asserted." We are of opinion that the Commission's rulings were not violative of the Federal Constitution, and that there were no insufficiencies of allegation in the complaint, the findings, or the order. By petitioner's failure to deny, and its express admissions of the allegations of the complaint, it waived all questions except the sufficiency in law of the allegations of complaint. Likewise its consent that the cease and desist order might issue waived every defense except a challenge of the jurisdiction of the Commission over the subject matter. This jurisdiction the petitioner concedes in its complaint, and we think the complaint is sufficient in law.

 Petitioner further contends that its business as conducted according to the plans hereinbefore set forth, is not in competition with sellers of straight candy. We do not concede this to be true, but if true, such sales are contrary to the established public policy of the Federal Government. Federal Trade Commission v. R. F. Keppel & Brother, supra. This is sufficient even in the absence of competition, for in the Keppel case the Court said that a method of competition which is contrary to the established public policy of the United States is an unfair method of competition within the intent and meaning of section 5 of the statute. A violation of a public policy is an injury to the public, and it is in the public interest to prevent the use of a method of competition which is contrary to an established public policy of the Federal Government, even if injury to competitors be not alleged or proved. Federal Trade Commission v. Beech Nut Packing Co., 257 U.S. 441, 42 S.Ct. 150, 66 L.Ed. 307, 19 A.L.R. 882. However, we are of opinion that the use of the unfair methods in question constituted injuries both to the public and to petitioner's competitors (see Bunte Bros., Inc. v. Federal Trade Commission, 7 Cir., 104 F.2d 996, decided by us May 17, 1939), and this finding is supported by substantial evidence.

In each of the cases the order of the Federal Trade Commission is affirmed.