**OSTLER CANDY CO. v. FEDERAL TRADE COMMISSION.**

**GLADE CANDY CO. v. SAME.**

**SHUPE–WILLIAMS CANDY CO. v. SAME.**

Nos. 1786–1788.

Circuit Court of Appeals, Tenth Circuit.
Aug. 30, 1939.

Rehearing Denied Nov. 7, 1939.

H. L. Mulliner, of Salt Lake City, Utah (J. R. Mulliner and H. H. Halliday, both of Salt Lake City, Utah, on the brief), for petitioners.

Martin A. Morrison, Asst. Chief Counsel, of Washington, D. C. (W. T. Kelley, Chief Counsel, P. C. Kolinski and James W. Nichol, Sp. Attys., all of Washington, D.C., on the brief), for respondent.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

BRATTON, Circuit Judge.

Ostler Candy Company, Glade Candy Company, and Shupe-Williams Candy Company, each engaged in the manufacture of candy in the State of Utah and in the sale and distribution of it in intrastate and interstate commerce, seek to have reviewed and set aside orders of the Federal Trade Commission entered under the provisions of section 5 of the Federal Trade Commission Act, 15 U.S.C.A. § 45, separately requiring them to cease and desist from certain trade practices which were found to constitute unfair competition in commerce. The proceedings are here on separate petitions to review, but the material facts are substantially alike and the questions presented are identical.

The Commission found in each proceeding that the company was in active competition with others engaged in the manufacture of candy and in the sale and distribution of it in interstate commerce; that several of its assortments of candy are composed of bars of candy, together with a device commonly called a "pushcard"; that the pushcard has partially perforated discs which are effectively concealed; that when a push is made and the disc separated from the card a number or legend is disclosed; that sales are five cents each; that the card bears a statement informing prospective and actual customers that each number or legend pushed entitles the person pushing it to receive one bar of candy but that certain numbers entitle the persons pushing them to one or more additional bars; that the card also bears a legend stating that the person making the last push will receive a specified number of

additional bars; that the company also distributes assortments composed of a number of packages of candy of varying size, together with a device commonly called a "punchboard"; that the punchboard has a number of holes in which slips of paper containing numbers are secreted; that when a punch is made and the slip separated from the board the number is disclosed; that punches are five cents each; that the board has printed thereon statements or legends informing prospective and actual purchasers that those punching certain numbers are entitled to specified packages of candy; that the packages of candy are distributed in accordance with such statements or legends; that candy assortments involving such lot or chance features are generally called "chance candy" and that assortments without the lot or chance features are called "straight goods"; that the company sells its chance candy to jobbers and retailers; that the jobbers resell to retailers; that the retailers display it for sale as packed by the company and it is sold to the consuming public in accordance with the sales plans of the company; that such candy is so packed and assembled as to involve and is designed to involve the use of a lottery scheme when sold and distributed to the consumers thereof; that the sale and distribution of chance candy through such methods constitutes a lottery or gaming device which is contrary to public policy, as morally bad and encouraging gambling, as injurious to the candy industry because it results in the merchandising of a chance or lottery instead of candy, and as providing retail merchants with a means of violating public policy and the laws of the several states; that it is injurious and prejudicial to the public and to the competitors of the company; and that it is a restraint upon and a detriment to the freedom of fair and legitimate competition in the candy industry.

Each order requires the company in the sale and distribution of candy in interstate commerce, to cease and desist (1) from selling and distributing to wholesale dealers and jobbers, for resale to retail dealers direct, candy so packed and assembled that sales to the public are to be made, or may be made, by means of a lottery, gaming device, or gift enterprise, (2) from supplying to or placing in the hands of retail and wholesale dealers and jobbers assortments of candy which are used, or may be used, without alteration or rearrangement of the contents thereof, to conduct a lottery, gaming device, or gift enterprise in the sale or distribution of the candy contained in such assortments to the public, (3) from supplying to or placing in the hands of retail and wholesale dealers and jobbers assortments of candy, together with a pushboard or punchboard for use, or which may be used, in distributing or selling such candy to the public at retail, and (4) from furnishing to retail and wholesale dealers and jobbers pushcards or punchboards, either with packages or assortments of candy or separately, bearing a legend or statement informing the purchasing public that the candy is being sold by lot or chance, or in accordance with a sales plan which constitutes a lottery, gaming device, or gift enterprise.

The constitutionality of section 5 of the statute, as amended by the Act of March 21, 1938, 52 Stat. 111, 15 U.S.C.A. § 45, is challenged. It is argued that the amendment gives to an order to cease and desist from a trade practice the full force and effect of a judgment or decree of a court, thus vesting judicial power in the Commission. The amendment provides that the order shall become final upon the expiration of the time allowed for the filing of a petition for review, if no such petition has been filed within that time. The change relates solely to the remedy of the Government for its enforcement; it does not transform the order into the equivalent of a legislative act or a judgment or decree of a court; and the provision for judicial review meets the requirements of due process. The statute is not open to attack for want of constitutional validity. National Candy Co. v. Federal Trade Commission, 7 Cir., 104 F.2d 999.

The jurisdiction of the Commission is attacked. The contention is that as a prerequisite to jurisdiction to issue a complaint, the Commission must first determine whether there is reason to believe that one has been or is using an unfair method of competition in interstate commerce; that after determining such question in the affirmative the Commission cannot proceed unless it further appears that the proceeding would be in the interest of the public; and that the Commission did not acquire jurisdiction here because no unfair method of competition existed in that chance candy is not sold at retail in competition with straight candy. It is well settled that in

order to initiate such a proceeding the Commission must first ascertain that an unfair method of competition in commerce has been or is being used, and, if so, that a proceeding would be in the interest of the public. Federal Trade Commission v. Raladam Company, 283 U.S. 643, 51 S.Ct. 587, 75 L.Ed. 1324, 79 A.L.R. 1191. But here the correspondence passing between the Commission and the companies shows clearly that the Commission was thoroughly conversant with the material facts bearing upon the manner in which the chance candy was packed, distributed, and ultimately sold at retail to the consuming public. A further investigation would have been idle and useless. A court on petition to review a cease and desist order cannot inquire into the quantum or sufficiency of the factual information on which the Commission made its initial determination that an unfair method of competition was being used and that a proceeding would be in the public interest. That is a matter for the Commission. Where the Commission acts on some information, the scope of judicial review begins with the filing of the complaint. We do not explore the question whether a cease and desist order may be attacked on review for want of any evidence on which the Commission made its initial determination as no such situation is presented.

█ The statute condemns any method of competition in interstate commerce which is contrary to public policy, Federal Trade Commission v. Beech Nut Packing Co., 257 U.S. 441, 42 S.Ct. 150, 66 L.Ed. 307, 19 A.L.R. 882; Wholesale Grocers' Association v. Federal Trade Commission, 5 Cir., 277 F. 657; Walter H. Johnson Candy Co. v. Federal Trade Commission, 7 Cir., 78 F.2d 717; it interdicts any system of competitive merchandising in such commerce which uses or employs a lottery, gaming device, or gift device, Federal Trade Commission v. Keppel & Bro., 291 U.S. 304, 54 S.Ct. 423, 78 L.Ed. 814; and pushcards and punchboards are within that class, Hofeller v. Federal Trade Commission, 7 Cir., 82 F.2d 647; Federal Trade Commission v. F. A. Martoccio Company, 8 Cir., 87 F.2d 561; Federal Trade Commission v. Charles N. Miller Co., 1 Cir., 97 F.2d 563; Helen Ardelle, Inc. v. Federal Trade Commission, 9 Cir., 101 F.2d 718; Bunte Bros. v. Federal Trade Commission, 7 Cir., 104 F.2d 996; National Candy Co. v. Federal Trade Commission, supra.

█ It is urged that the jurisdiction of the Commission is restricted to methods of competition as they affect competitors and the public; that it has no independent police powers; and that these proceedings should have been dismissed for the reason that the sale of chance candy at retail does not constitute competition with the sale of straight candy. The essence of a proceeding of this kind is the forbidding of the continued use of an unfair trade practice in commerce in competition with others. It necessarily follows that where it appears in the course of such a proceeding that competition does not exist the proceeding should be dismissed. But the Commission found that the sale and distribution of chance candy in commerce and its sale at retail does comes into competition with that of straight candy; that it diverts trade in volume from business enterprises not using such methods; and that it is prejudicial to the public. That finding is conclusive on review if it is supported by substantial evidence. Federal Trade Commission v. Winsted Hosiery Co., 258 U. S. 483, 42 S.Ct. 384, 66 L.Ed. 729; Federal Trade Commission v. Algoma Lumber Co., 291 U.S. 67, 54 S.Ct. 315, 78 L.Ed. 655; Federal Trade Commission v. Standard Education Society, 302 U.S. 112, 58 S.Ct. 113, 82 L.Ed. 141. It would not serve any useful purpose to detail the evidence at length. It suffices to say that there was substantial evidence to show that while generally there are differences in the types of customers for the two kinds of candy, the sale of chance candy does reduce the sale of straight candy. As the diversion of a substantial part of trade from straight candy to chance candy constitutes competition, the finding is supported by adequate evidence and therefore cannot be overthrown on review.

█ The remaining contention which merits consideration is that the orders are too broad. It is said that the first and second paragraphs are broad enough to include any candy which might be sold at retail through means of a lottery, gaming device, or gift device, even though the company did not intend or contemplate at the time of its sale and distribution to jobbers or retailers that it should be retailed through such methods; and that unless the orders are limited they will effectively forbid the sale and distribution in commerce of any candy whatsoever. The first paragraph forbids the sale and distribution

966

of candy so packed and assembled that sales are to be made, or may be made, by means of a lottery, gaming device, or gift device; and the second paragraph prohibits the. supplying or placing in the hands of dealers and jobbers assortments which are used, or may be used, without alteration or rearrangement of the contents thereof to conduct a lottery, gaming device, or gift device in the sale or distribution of the candy contained therein. The Circuit Court of Appeals of the Seventh Circuit limited an order quite similar to these in a manner equivalent to striking from the first paragraph of these orders the words "or may be made", and from the second paragraph the words "or which may be used". Federal Trade Commission v. McLean & Son, 7 Cir., 84 F.2d 910. The First Circuit took like action, citing with approval and resting its decision upon the McLean case. Federal Trade Commission v. Charles N. Miller Co., supra. The Ninth Circuit did likewise, citing both the McLean and the Miller cases. Helen Ardelle, Inc. v. Federal Trade Commission, supra. But the Seventh Circuit concluded in the recent case of National Candy Co. v. Federal Trade Commission, supra, that its action in the McLean case was not well founded. The court said that more deliberate consideration convinced it that the language of the order, in the light of the allegations of the complaint and the findings, could not reasonably be construed to have application to straight candy; that it applied only to candy which carried an unfair appeal to retail dealers and retail purchasers on account of the element of chance involved in the sale of it. Giving the order that construction, the court declined to restrict it. These orders must be construed in the light of the allegations contained in the complaint and the findings of the Commission. And when construed in that manner it is reasonably clear that the first and second paragraphs apply exclusively to candy which is so packed or arranged as to be especially suited to sale at retail in a manner which makes an unfair appeal to retail dealers and retail purchasers, due to the element of chance involved, and to candy which is peculiarly adapted in some other manner to sale at retail by chance method. With these paragraphs thus construed, the orders are not objectionably broad in scope and effect.

The petitions to set aside the orders are severally denied.