## SWEETS CO. OF AMERICA, Inc., v. FEDERAL TRADE COMMISSION.

### No. 154.

Circuit Court of Appeals, Second Circuit.

Jan. 29, 1940.

CLARK, Circuit Judge, dissenting in part.

———◆———

Louis H. Solomon, of New York City, for petitioner.

W. T. Kelley, Chief Counsel, Martin A. Morrison, Asst. Chief Counsel, and James W. Nichol, Sp. Atty. for Federal Trade Commission, all of Washington, D. C., for respondent.

Before SWAN, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is a petition to review an order of the Federal Trade Commission entered on December 7, 1938, against Sweets Company of America, Inc. The petitioner is a manufacturer of candy engaged in shipping its product to retail dealers and jobbers throughout the United States.

The Federal Trade Commission made findings of fact which so far as they are pertinent to the issues before us were the following:

"Paragraph Two: In the course and conduct of its business, * * * the respondent has sold various assortments of candy so packed and assembled as to involve the use of a lottery scheme when sold and distributed to the consumers thereof. One of said assortments is hereinafter described in detail for the purpose of showing the methods used by the respondent, but this description does not include all of the details of the several sales plans which the respondent has used in the distribution of its assortments of candy by lottery or chance. Such assortment is composed of 150 small rolls or pieces of candy of uniform size and shape called 'Little Rolls', which are packed in a box together with 24 larger pieces of candy called 'Dinner For Six', packed in a separate box, which larger pieces of candy are to be given as prizes to purchasers of said small rolls or pieces of candy of uniform size and shape in the following manner:

"The majority of the said small rolls or pieces of candy of uniform size and shape in said assortment have the same color but a small number of or a minority of said small rolls or pieces of candy have a different color. Said rolls or pieces of candy of uniform size and shape retail at the price of 1¢ each but the purchasers who procure one of the said rolls or pieces of candy colored differently from the majority of said rolls or pieces of candy are entitled to receive, and are given without charge, one of the said larger pieces of candy. The rolls or pieces of candy of uniform size and shape are individually wrapped in non-transparent wrappers and the color of the said pieces of candy is effectively concealed from purchasers and prospective purchasers until a selection has been made and the wrapper is removed. The said larger pieces of candy are thus distributed to the purchasing public wholly by lot or chance.

* * * * * *

"Paragraph Four: Many dealers buy from respondent equal numbers of boxes of said 'Little Rolls' and said 'Dinner For Six'. Said 'Little Rolls' are contained in a box and the majority of said rolls which are of one color are separated by a partition from the minority of said rolls which are of a different color. There are no indications on the wrappers of said rolls as to the colors thereof. Many retail dealers who purchase said 'Little Rolls' and 'Dinner For Six' mix the said rolls of different colors and sell them for 1¢ each and give said 'Dinner For Six' pieces of candy as prizes to purchasers of said rolls of a different color than the majority of said rolls in accordance with the sales plan or method described in Paragraph Two hereof. The packing and distributing by respondent of candy in the manner above found is contrary to public policy. * * *"

After making a further finding to the effect that other manufacturers in competition with the petitioner do not sell their candies in assortments such as are above described and lose trade because consumers prefer assortments which involve the gambling feature, the Commission concluded that the above practices injure competitors and constitute unfair methods of competition.

The Commission thereupon made an order directing the petitioner to cease and desist:

"1. Selling and distributing candy so packed and assembled that sales of such candy to the general public are to be made or may be made by means of a lottery, gambling device or gift enterprise.

"2. Supplying to or placing in the hands of dealers packages or assortments of candy which are used or may be used to conduct a lottery, gambling device or gift enterprise in the sale or distribution of said candy contained in the said packages or assortments to the public.

"3. Supplying to or placing in the hands of dealers for sale to the public packages or assortments of candy composed of individually wrapped pieces of candy of uniform size and shape and of different colors, together with larger pieces of candy or any other merchandise, which said larger pieces of candy or other merchandise are to be or may be given as prizes to the purchasers procuring pieces of said candy of a particular color."

 The order to "cease and desist" further provided that within sixty days the petitioner should file a written report setting forth in detail the manner and form in which it had complied with the directions of the Commission.

The petitioner argues that the words "or may be made" in subdivision 1 of the order; "or may be used" in subdivision 2; "or may be given" in subdivision 3, are such as to throw upon it all responsibility for the acts of any jobber or retailer who may reassemble candies, however they may have been packed, so that they are again placed in prohibited combinations. This seems a reasonable criticism, for any box of candies of identical sizes, containing chocolate-covered pieces of a variety of flavors, might be used for gambling purposes for a child buying some of the pieces might be given a prize if he happened to pick out a piece, the contents of which was of a particular flavor. The Commission does not intend to prohibit a manufacturer from making such a sale unless he has reason to suppose that the jobber or retailer who buys his candy will use it in connection with a lottery. This is shown by the statement in the brief of the Commission that their order is not applicable to "'straight candy', because a dealer thereafter so repacks and reassembles it as to sell it as 'chance candy'." Yet the order is so sweeping that it seems to prohibit a sale like the one described even though the use of candies in a lottery might neither be anticipated nor probable.

We think that an innocent vendor will not be subjected to the risk of violating the order if it be modified so that the words "are likely to be made" are substituted for "may be made" in subdivision 1; the words "are likely to be used" are substituted for "may be used" in subdivision 2, and the words "are likely to be given" are substituted for "may be given" in subdivision 3. The order as thus modified would only preclude sales where a lottery system was known to be practised or where the packing of the candy carried an unfair appeal to purchasers. It would not preclude a manufacturer from selling its candies when so packed that a lottery was neither reasonably anticipated, nor suggested, nor likely to occur.

Counsel for the Commission insist that the order requires no modification because it only forbids sales in cases where candy is "so packed and assembled that sales of such candy to the general public are to be made or may be made by means of a lottery". But this limitation is at most only found in subdivision 1, and not in subdivisions 2 or 3, and even in subdivision 1 precludes any assembly of candy in which a selection of a particular flavor by chance is possible. Subdivision 2 is subject to a similar criticism. Subdivision 3 would preclude sales of candies of uniform size and shape but of different flavors contained in wrappers of the same color even in cases where there was no likelihood of their use in a lottery just because a lottery might possibly occur.

It must be remembered that the proof of the use of petitioner's candies for lottery purposes was confined to transactions in but four or five retail stores. The Commission has shown by its brief that no burdensome order is intended. The difficulty with the order as framed is that when read literally its terms are more severe than the purposes of the Commission require and that it does not clearly inform the manufacturer of its rights.

It is to be observed that the petitioner has not attacked the findings of the Commission that the particular method which the petitioner has employed in assembling its candies for sale and described in "Paragraph Four" supra is a practice which is contrary to public policy. Therefore, the

order as modified forbids the particular practice therein described and such other practices as are likely to involve a lottery.

An order similar in form to the one in the case at bar was modified by the Courts of Appeal of the Seventh, First and Ninth Circuits in Federal Trade Commission v. A. McLean & Son, 7 Cir., 84 F.2d 910, 913; Federal Trade Commission v. Miller Co., 1 Cir., 97 F.2d 563; Ardelle v. Federal Trade Commission, 9 Cir., 101 F.2d 718. In Ostler Candy Co. v. Federal Trade Commission, 10 Cir., 106 F.2d 962, such an order was allowed to stand without modification by the Court of Appeals of the Tenth Circuit, and in National Candy Co. v. Federal Trade Commission, 7 Cir., 104 F.2d 999, the Seventh Circuit abjured its earlier decision in Federal Trade Commission v. A. McLean & Son, supra, and permitted a like order to remain unchanged. We think the decisions of the courts of the First and Ninth Circuits are to be preferred to those of the Seventh and Tenth because they more clearly define the obligation of the manufacturer.

An order should pass affirming the order of the Commission as modified in the manner above provided.

Order modified.

CLARK, Circuit Judge (dissenting in part).

I would affirm the Commission's order. I do not believe we should substitute our own vagueness for that of the Commission. The Seventh Circuit Court of Appeals has repented of so doing. National Candy Co. v. Federal Trade Commission, 7 Cir., 104 F.2d 999, repudiating Federal Trade Commission v. A. McLean & Son, 7 Cir., 84 F.2d 910. Compare also Ostler Candy Co. v. Federal Trade Commission, 10 Cir., 106 F.2d 962. These cases hold that the Commission's order cannot be reasonably construed to have application to straight candy, but, in view of the allegations of the complaint and the findings, applies only to candy carrying an unfair appeal to retail dealers and purchasers, on account of the element of chance involved in its sale. So viewed, the order does not make petitioner responsible for acts of retailers and is proper. The cases point to an extensive evil, and suggest the undesirability of an ineffective order, as does the testimony before the Commission. If the order proves unworkable in practice, the Commission may correct it more expertly than we can now

when we do not know that it contains other than imaginary defects.

I do not understand our modification of the order. Does "likely to be used" mean any more than "capable of being used," which is the present order reasonably construed? Presumably the new order must mean something other than did the one it changes. If "likely" means "probable," and that is something more than "capable," we may be getting dangerously near the nullifying requirement of subjective intent on the part of the manufacturer. At any rate, "are likely to" suggests a question-begging requirement of some unspecified quantum of proof of possibilities, which may render the order practically unenforceable.

The Commission's difficulty here apparently springs from overkindness (cf. Capon Water Co. v. Federal Trade Commission, 3 Cir., 107 F.2d 516, 518), for an order requiring distinctive labeling of the candies would seem impervious to attack. Even though the Commission may have to come to such an order in time, I would not discourage its trying of milder measures first, as I fear we are doing when we present it with a mandate thus uncertain.