## THOMASON v. UNITED GAS PUBLIC SERVICE CO., Inc., et al.

### No. 2382.

District Court, W. D. Louisiana, Monroe Division.

July 17, 1933.

G. P. Bullis, of Vidalia, La., for plaintiff.

Sholars & Gunby, of Monroe, La., and Blanchard, Goldstein, Walker & O'Quin, of Shreveport, La., for defendants.

DAWKINS, District Judge.

Defendant Arkansas Natural Gas Company has filed herein exceptions of misjoinder of parties and causes of action, and to require plaintiff to elect as to which of said defendants he will proceed against. A brief in support of the exceptions has been filed by counsel for the present defendant, but none has been furnished on behalf of plaintiff, although the matter was submitted some three months ago.

The suit was filed under the Act of July 2d, 1890 (chapter 647, 26 Stat. 209 [15 USCA §§ 1–7, 15 note]), commonly known as the Sherman Anti-Trust Law, and Act of Oct. 15, 1914 (chapter 323, § 4, 38 Stat. 731 [15 USCA § 15]), as well as an Act of the Louisiana Legislature (Act No. 11 of the Extra Session of the Legislature of 1915).

The petition alleges that after the discovery of gas in the Richland parish field in the year of 1926, the following firms, persons, and corporations leased lands, drilled for natural gas, and engaged in active competition for the production and marketing of said gas, to wit:

W. D. Ahearn, Arkansas Natural Gas Company, S. D. Hunter, Industrial Gas Company, Magnolia Gas Company, Moody & Seagraves, Northern Louisiana Natural Gas Company, Ouachita Natural Gas Company, Palmer Corporation of Louisiana, Richland Production Company, and State Line Oil & Gas Company.

The petition further alleges that said field is underlaid with a stratum of gas sand, consisting of a continuous reservoir or pool, and that wells drilled therein draw gas a distance of from 1 to 2 miles, and that within the boundaries of said pool it could have and should have been developed in a manner to permit equal and equitable distribution among the owners of the lands in proportion to the acreages owned by them; that only a small quantity of said gas is used in Richland parish, and, consequently, the

only markets are those afforded by the pipe lines which have been built into the field; that prior to 1929 three pipe lines had been built into and were serving said field, but in that year the defendant Arkansas Natural Gas Company and Moody & Seagraves started building two additional lines, running from said field to markets in the state of Texas. The petition then alleges, as it appears, parenthetically, that the Arkansas Natural Gas Company drilled a well which through negligence and carelessness was allowed to go wild and crater, with the result that the operators and landowners lost a large amount of gas, but no claim or demand is made against it based upon this alleged fault. Plaintiff further alleges as follows:

"9. Thereupon a series of conspiracies, contracts and mergers were made for the purpose of restraining and/or monopolizing the trade and commerce of Richland Gas field, and the pipe lines leading from it, as follows:

"10. In or about the month of May, 1929, Arkansas Natural Gas Company, and Palmer Corporation of Louisiana and the Moody & Seagraves interests, and others, entered into a series of contracts, signed by two or more of them, the details of which are not fully known to petitioner, but which provided in substance, and contained stipulations in substance, as follows:—The Moody & Seagraves interests would stop the construction of their said pipe line to Texas; the Arkansas Natural Gas Co. would build its said line; the Arkansas Natural Gas Company would cease and desist from all activity and business it had been carrying on in Richland Gas Field (it having been up to that time one of the largest and most active developers and operators in said field); the Arkansas Natural Gas Company would complete only the business it had already started in the field, namely, it would produce all its gas from the wells it then had or was obligated to drill, and except for said obligations, would no longer take any part in the trade or commerce of the Richland Gas Field, and would stop all its competition therein; that Arkansas Natural Gas Company would buy from said contracting parties, all the gas it used except what was produced from its own wells, and would transport thru its said pipe lines only the gas of said contracting parties, the price of gas and transportation being stipulated."

Further, that the Arkansas Natural Gas Company constructed its said line, as contemplated, through a subsidiary and about the same time gained control of another line known as the Crusader property; that about the same time or shortly thereafter a merger or combination was formed of all of the persons, firms, and corporations enumerated in the beginning of this opinion, by which they were brought under a common ownership "except the Arkansas Natural Gas Company."

It is then alleged that another corporation, known as the Louisiana Gas & Fuel Company, was formed as successor to the said persons, firms, and corporations "which had theretofore actively competed in the trade and commerce of the Richland Parish field, and acquired all of their business, properties, assets and liabilities." The petition further alleges that said merger and consolidation "gave practically a monopoly control of the Richland Gas field"; that since said date the only other persons permitted to supply gas to said pipe lines in said field have been the Southern Carbon Company, United Carbon Company, and the Interstate Gas Company, "which supplies its own requirements from its own wells," as well as two carbon plants in Richland parish, which are able to use only a small quantity of gas at a very low price because carbon black cannot be profitably made in competition with pipe lines. The petition alleges further:

"14. In 1929, three gas pipe lines were built from Richland Gas Field to the Cities of St. Louis, Missouri, Memphis, Tennessee, and Atlanta, Georgia, respectively. Prior to their construction, an agreement was made by them with the said merged and consolidated companies that said pipe lines would buy all of their gas from said merged and consolidated companies and Southern Carbon Co. and United Carbon Co. at definitely fixed percentages, and said pipe lines covenanted and agreed that they would not buy gas from any other persons, firms or corporations.

"15. In or about the year 1929, the Interstate Pipe Line was extended from the City of Baton Rouge, Louisiana, to the City of New Orleans, Louisiana, said extension being made by a corporation called Southern Gas & Fuel Co. under a contract whereby the Interstate Natural Gas Company transported its gas to Baton Rouge. Said Southern Gas & Fuel Company, which owned and operated said pipe line, was included in the aforesaid merger and consolidation, and all of its capital stock acquired by Louisiana Gas & Fuel Co., as aforesaid.

"16. On December 31, 1930, said Louisiana Gas & Fuel Company was succeeded and merged into a new corporation called,

United Gas Public Service Company, which new company has since that date owned and operated all of said merged and consolidated properties. Said United Gas Public Service Company is a corporation organized and existing under the laws of the state of Delaware, and is a citizen of the state of Delaware, domiciled at Wilmington in said state, and is a continuation of said Louisiana Gas & Fuel Company, and acquired all of the property, business, rights and obligations of said Louisiana Gas & Fuel Company, and has the same ownership, control and management as the Louisiana Gas & Fuel Company.

"17. As a result of all of said conspiracies, mergers and consolidations and contracts, the free competition in the trade and commerce of said Richland Gas field which had existed up to the month of May, 1929, ceased to exist. Since then the trade and commerce of said gas field was and is under the almost complete domination and control of said United Gas Public Service Company and its said predecessors, for the reason that the said company had acquired dominance and control of all of the pipe lines leading from said field as aforesaid. The result thereof was that since 1929 no one can drill for and produce natural gas in said Richland Gas field except by the consent of and under the conditions imposed by said monopoly, because any one producing natural gas in said Richland gas field has no market therefor and cannot sell said gas except to said monopoly.

"18. United Gas Public Service Company and its predecessor, Louisiana Gas & Fuel Company, have used their said monopoly to stop the development of Richland Gas field. A reasonable and equitable development of this gas field required that one or more wells be drilled on the land of each landowner, sufficient to give each landowner his fair proportion of the gas produced from the pool common to his land and his neighbor's. Such a development was in progress at the time of said merger, and would have resulted if active competition had continued, because competition would have compelled every producer to treat his lessors fairly. The termination of competition removed that compulsion. Said monopoly found it possible and more profitable to take all of the gas of the field from the wells already existing, on account of the lateral flow of gas in the pool, as hereinabove recited. Consequently, said monopoly stopped the drilling of new wells, which had actively progressed up to that time. Since its formation almost no new wells have been drilled, except a few which had been specifically contracted for prior to the completion of said monopoly. The result has been that the land owners upon whose land no well had been drilled prior to the monopoly have been ruined, because the gas has been drained from under their land with no royalty to them; other land owners on whose land insufficient wells have been drilled or on whose land faulty wells have been drilled, so that they do not produce properly because of defects of drilling, have suffered immense losses; said monopoly completely failed to protect its land owners surrounding the aforesaid wild well of the Arkansas Natural Gas Company, although the Arkansas Natural Gas Company did protect its lessors by taking from their lands exceptional quantities of gas to off-set the gas drained by said wild well. For all of the injuries, the land owners have been denied the remedy of canceling their leases, because since the monopoly controlled all markets and sales, cancellation would have been futile. Landowners who incurred debt expecting to pay the debt from their gas royalties have been ruined and lost their lands because of the failure of said monopoly to give them employment. Said failure has not been due to lack of markets because said United Gas Public Service Company and its predecessors have sold annually, since their formation more than fifty billion feet of gas per year from Richland Gas field alone, and have maintained an open market to purchase gas when they could buy it more cheaply, or whenever they could buy it at bargain prices.

"19. Said activities hereinabove recited constitute a monopoly and restraint of trade and interstate and intrastate commerce in violation of the laws of the United States, especially the Acts of Congress commonly known as the Sherman Act, and the Clayton Act, and in violation of the laws of the State of Louisiana, especially Act No. 11 of the Special Session of the General Assembly of Louisiana, for the year 1915.

"20. Said contracts, agreements, conspiracies, monopolies and restraints of trade and commerce have continued and existed and been given full force and effect continuously from the respective dates of their inception to the present time, and now continue and exist."

The petition then proceeds to describe the land owned by the plaintiff, consisting of some 212 acres, and the transfers by which the leases upon said lands finally were conveyed to the defendant United Gas Public Service Company, Inc., and that the said

defendant had assumed all of the obligations therein, "the same as the lessee in the original leases." And in paragraph 24 it is alleged:

"24. It is an implied consideration of said leases, the principal consideration inducing petitioner to sign them, and the law of Louisiana at the date said leases were signed, that lessee is obligated to develop the leased premises properly, and secure the gas thereunder for the common benefit of lessor and lessee."

Further, petitioner says he is without experience in the gas business, whereas defendants have had long experience and own extensive facilities for the production and sale of gas; that during the years 1930 to 1932, inclusive, only 720,513,000 cubic feet of gas were produced from said lands or approximately 3,400,000 per acre, whereas, the defendant United Gas Public Service Company, Inc., had produced from other lands similarly situated over said period prior to the year 1933 and beginning in 1929, an average of 13,773,000 cubic feet per acre; that the defendant United Gas Public Service Company, Inc., was obliged under the obligations of the lease to produce not less than the average from petitioner's lands so as to distribute "their pull equitably among their lessors." The petition is further quoted as follows:

"32. Said leases have conferred on lessees the exclusive right to drill, and petitioner having been thus deprived of all rights and control over his own property, lessees were thereby obligated to protect petitioner by drilling sufficient wells, and producing therefrom sufficient gas, not only to offset drainage from other wells, but also to place petitioner on a basis of equality of production and royalties with other land owners similarly situated.

"33. Lessees owed a special duty to petitioner so to do, because said land lies about one-quarter of a mile from the wild well recited in paragraph 8 hereinabove, and said well drained immense quantities of gas from petitioner's said lands, and the Arkansas Natural Gas Company to offset said drainage, pulled from wells on other land adjoining petitioner, immense quantities of gas in addition to that coming from the wild well."

It further alleges that the defendant should have produced from plaintiff's land and paid therefor a total of 2,300,364,000 cubic feet more gas than was actually taken therefrom; that because of the drainage from the wild well of the defendant Arkansas Nat-

ural Gas Company, and the quantities drawn from the pull through other wells, more than two-thirds of petitioner's share of the gas has been taken.

Petitioner further alleges that the "lessees have failed to pay petitioner the correct amount due him for said gas actually produced from the well on his said land" during the periods said leases were owned by the persons named as the lessees and assignees down to and including the defendant United Gas Public Service Company, Inc., and have improperly deducted $180.13 as a part of the severance tax paid the state of Louisiana, no part of which petitioner alleges he owed, "since he never owned said gas."

The petition then refers to the terms of the leases, which are attached to the petition, and alleges that plaintiff is entitled to receive one-eighth of the value of said gas, which has been at all times since January, 1929, not less than 6 cents per thousand cubic feet, calculated at ten ounces above atmospheric pressure; that he has received from said lessees and assigns a total of $2,295.37, and that petitioner has made "repeated demands on said lessees, both in writing and orally, since January 11, 1929, that they comply with the aforesaid obligations of their leases, but they have failed, neglected and refused to·pay"; that these conditions have been "caused solely by the monopoly and restraint of trade and commerce hereinabove recited. Had free competition existed, the said lessees would not have dared to treat petitioner in such unfair manner." He alleges that the amount which he should have received was $20,361.20, and that under the statute he is entitled to "treble said amount, being $61,083.60, plus $5,000 attorney's fees," and, reserving the right to sue for what may become due after filing the petition, he prays for judgment in the amount mentioned, including attorney's fees and legal interest at the rate of 5 per cent. per annum from January 1, 1931.

It will be seen from this somewhat extended recital of the allegations and nature of the suit that the only connection the defendant Arkansas Natural Gas Company had with the matter is to be found in articles 9, 10, and 11 of the petition quoted above, wherein it is recited that this defendant Palmer Corporation, one of the predecessors of the United Gas Public Service Company, Inc., and Moody & Seagraves, "and others, entered into a series of contracts, signed by two or more of them, the details of which are not fully known to petitioner," but in substance providing that Moody & Seagraves

would stop the construction of their pipe line to Texas, the defendant Arkansas Natural Gas Company would complete its line, but that the latter would thereafter "cease and desist from all of the activity and business it had been carrying on in said Richland Parish field (it having been up. to that time one of the largest and most active developers and operators in said field)" and would complete only the business it had started in that it would produce all of its gas it then had or was obliged to drill, and, except for said obligations, "would no longer take any part in the trade or commerce of the Richland Parish gas field, and would stop all its competition therein"; that said Arkansas Natural Gas Company would, buy from said contracting parties all the gas it could use "except what was produced from its own wells, and would transport through its said pipe line only the gas of said contracting parties, the price of gas and transportation being stipulated."

In effect it is charged that this defendant, with others, entered into an illegal combination to restrain the production, sale, and transportation of natural gas in the field where plaintiff's property was situated, by acquiring control of at least one of the pipe lines which had been or was to serve said field, preventing the construction of another, and eliminating the Arkansas Natural Gas Company with its pipe line facilities, as an active competitor for the purchase of gas therein. However, the petition does not allege that the said defendant was a prospective purchaser of gas from plaintiff's property, but it affirmatively charges that the property of petitioner was under lease to the predecessors of defendant United Gas Public Service Company, Inc., and hence they alone were entitled to produce his said gas. Neither is it alleged that the defendant Arkansas Natural Gas Company joined in the merger of the several other persons, firms, and corporations, whose interests were finally acquired by the United Gas Public Service Company, Inc., but the petition, in paragraph 12, specifically negatives the idea that it entered into said merger. It is left to inference that by entering into said agreement with Moody & Seagraves and the Palmer Corporation, predecessors of the defendant United Gas Public Service Company, Inc., it was made possible for the latter, after acquiring control of the remaining purchasers in the field and the pipe lines leading therefrom, to create a monopoly and to pursue the course which was thereafter followed according to the allegations of the petition here-

in quoted and referred to. It is not alleged that the Arkansas Natural Gas Company knew or intended, or that it was within the contemplation of the parties to this first agreement (by which it withdrew from further development and activity in the field and stipulated it would purchase and transport only the gas of other persons to that arrangement) that the plan later charged to have been carried out was to be accomplished. In other words, as to this defendant, the charge is, in effect, that it, with the Palmer Corporation and Moody & Seagraves, committed a tort by entering into a combination in restraint of trade to eliminate it as a purchaser of gas, with its pipe line facilities, from competition in the purchase and sale of gas. It is not alleged that the Arkansas Natural Gas Company was engaged in the purchase of gas from landowners, situated as plaintiff was, and which could not be done in view of the leases alleged upon, but the reasonable implication is that the agreement restricted the gas it could transport to that of the other defendant. This necessarily included that of petitioner, controlled as it was by the Palmer Corporation through the leases. In order to avail himself of the benefits of the anti-trust laws, plaintiff, I think, must allege and prove that the unlawful acts of the participants in the combination in restraint of trade resulted injuriously to him as a direct and proximate consequence, and he cannot hold this defendant responsible for other and further acts, such as are charged against the United Gas Public Service Company, Inc., and the other concerns which are alleged to have merged with it, in view of the specific allegation that the Arkansas Natural Gas Company did not join therein, for the reason that the same are too remote and involve the intervention of separate and distinct agencies and conduct, over which it presumably had no control. While the plaintiff may be able in a proper petition to allege and show an injury resulting to him from the acts charged jointly against the Arkansas Natural Gas Company and those co-operating with it therein, it would not be proper to permit him to assert and try that cause of action in a suit wherein he seeks to recover of the other defendant for obtaining and exercising a monopoly in the manner charged in the remainder of the petition. This latter cause of action is based primarily on an alleged breach of contract, both as to its express and implied obligations, to which the Arkansas Natural Gas Company, Inc., is in no wise a party. Petitioner's demand in that respect is not

only for a greater price under the contract for the gas which was actually taken but for a similar figure for that which should have been used under a fair apportionment of the field, both of which claims arise from the lease and the obligations incident thereto.

My conclusion is that there is an improper joinder of causes of action. Both defendants could be joined as common tort-feasors as to matters charged against the two with respect to restraint of trade; but the defendant Arkansas Natural Gas Company has no concern with and is not charged with any responsibility for the alleged monopoly. The exception of misjoinder of causes of action will, therefore, be sustained and the petitioner required to elect which of the two he will pursue; i. e., the one against the two defendants for restraint of trade or the other against the United Gas Public Service Co., Inc., alone because of the alleged monopoly.

On May 5, 1933, similar exceptions of misjoinder of parties and causes of action were filed by the United Gas Public Service Company, Inc., which, in view of this decision, it is unnecessary to pass upon.

Proper decree should be presented.