## DOUGLAS CANDY CO. v. FEDERAL TRADE COMMISSION.

No. 12044.

Circuit Court of Appeals, Eighth Circuit.

Feb. 9, 1942.

Landis & Landis, of St. Joseph, Mo., for petitioner.

Joseph J. Smith, Jr., Asst. Chief Counsel, Federal Trade Commission, of Washington, D. C. (W. T. Kelley, Chief Counsel, Federal Trade Commission, Martin A. Morrison, Asst. Chief Counsel, and William L. Pencke and James W. Nichol, Sp. Attys., all of Washington, D. C., on the brief), for respondent.

Before GARDNER, SANBORN, and WOODROUGH, Circuit Judges.

WOODROUGH, Circuit Judge.

Douglas Candy Company petitions for review of a cease and desist order issued against it by the Federal Trade Commission in accordance with findings and conclusions entered after full hearing on the complaint, answer, evidence and briefs.

The findings and conclusions, in which the Candy Company is designated respondent, were as follows:

"Respondent is a corporation organized and doing business under the laws of the State of Missouri, and having its principal place of business in the city of St. Joseph, in said State.

"Respondent, for some time last past, has been, and now is, engaged in the manufacture and sale of candy, and its distribution to wholesale and retail dealers, and jobbers, and causes its said product, when sold, to be shipped from its principal place of business to purchasers thereof located in various states of the United States.

"Respondent, in the conduct of its business as set forth in Paragraph Two hereof,

has been, and now is, in competition with other corporations and with individuals and partnerships engaged in the sale and distribution of candy in commerce between and among various states of the United States.

"Respondent, in the sale and distribution of its merchandise as described in Paragraph Two hereof, has furnished and furnishes to the purchasers thereof various devices and plans of merchandising same which involve the operation of games of chance, gift enterprises, or lottery schemes, by means of which said merchandise is sold and distributed to the ultimate consumer wholly by lot or chance. Typical of the methods used by the respondent are the following:

"(a) One of respondent's assortments consists of a number of candy bars, together with a device commonly called a 'push card'. This push card bears the caption:

" '5c        Winner Bar Assortment        5c
(No Blanks)
Number 100 — receives — 5 Douglas Bars
Number  50 — receives — 3 Douglas Bars
Nos.  5–15–25–35–45–55–65–75–85–  receive 2 Douglas Bars
All Other Numbers receive 1 Douglas Bar.'

Below this heading are ranged one hundred partially perforated discs, for which pushes are sold at five cents each; over each disc appears a feminine name and concealed beneath the disc is a number which is not disclosed until the disc is pushed out; the number revealed entitles the purchaser of the push to the amount of candy indicated in the above-described caption.

"(b) Another of respondent's combinations consists of a number of candy bars, together with a device commonly called a 'punch board', which bears the following caption:

" 'Play Ball
" 'All Plays — Receive Douglas Bars Only
Home Run                — receives — 5 Bars
Three Base Hit         — receives — 5 Bars
Two Base Hit           — receives — 4 Bars
One Base Hit           — receives — 2 Bars
Stolen Base            — receives — 2 Bars
All Other Plays receive           — 1 Bar'

(with illustrations of two ball players and the additional words):

" 'Batter Up                Make a Hit'

Below this caption are ranged three hundred covered tubes, concealed within each of which is a slip of paper bearing certain printed words or phrases which are not disclosed until the cover is punched and the slip is withdrawn; these punches are sold at five cents each and each purchaser is entitled to one bar of candy, but the purchaser who punches out a slip containing words or phrases which correspond with one of the five specifically named awards appearing in the caption receives the number of bars there indicated, without additional cost.

"(c) Another of respondent's combinations consists of a number of candy bars, together with a punch board bearing the following caption:

" 'Basket Ball
" 'Play 5c Play
Tip-Off Goal        —rec's. ...... 6 Bars
Set Play Goal       —rec's. ...... 3 Bars
Rebound Goal        —rec's. ...... 2 Bars
Side Court Goal     —rec's. ...... 2 Bars
Long Shot Goal      —rec's. ...... 2 Bars
Free Throw Goal     —rec's. ...... 2 Bars
All Other Plays     —rec. ....... 1 Bar
—o— Make a Goal —o—'

Under this caption are ranged three hundred covered tubes, concealed within each of which is a slip of paper bearing certain printed words or phrases which are not disclosed until the cover is punched and the slip is withdrawn. Each of these punches is sold for five cents, and each purchaser is entitled to one bar of candy, but the purchaser punching out a slip containing words or phrases which corresponds with one of the six specifically named awards appearing in the caption receives the number of bars there indicated, without additional cost.

"Respondent's salesman has urged the use of respondent's 'boards' because they assist in the sale of the candy. The use of said boards does, in fact, promote such sales.

"Respondent, by its sales methods hereinbefore described, places in the hands of others various devices to be used in the distribution of its merchandise by means of a game of chance, gift enterprise or lottery scheme, and by the use of such devices said merchandise is distributed to the ultimate consumer wholly by lot or chance, and respondent's said sales methods are

contrary to the established public policy of the Government of the United States.

"During all of the time herein mentioned, respondent has been in competition with other manufacturers and distributors of candy who are engaged in commerce between and among various states of the United States, and who are unwilling to use, and do not use, in the distribution of their merchandise, any method involving a game of chance, gift enterprise or lottery scheme; and as a result of respondent's said methods, trade has been unfairly diverted from such competitors to the respondent.

"Conclusion.

"The aforesaid acts and practices of the respondent are all to the prejudice and injury of the public and of respondent's competitors, and constitute unfair methods of competition in commerce and unfair and deceptive acts and practices in commerce, within the intent and meaning of the Federal Trade Commission Act [15 U.S.C.A. § 41 et seq.]."

The cease and desist order complained of is as follows:

"It Is Ordered that the respondent, Douglas Candy Co., its officers, representatives, agents, and employees, directly or through any corporate or other device, in connection with the offering for sale, sale and distribution of candy or any other merchandise in commerce as 'commerce' is defined in the Federal Trade Commission Act, do forthwith cease and desist from:

"1. Selling or distributing candy or any other merchandise so packed or assembled that sales of such candy or other merchandise to the public are to be made or may be made by means of a game of chance, gift enterprise or lottery scheme;

"2. Supplying to or placing in the hands of others push or pull cards, punch boards or other lottery devices either with assortments of candy or other merchandise or separately, which said push or pull cards, punch boards or other lottery devices are to be used or may be used in selling or distributing said candy or other merchandise to the public;

"3. Selling or otherwise disposing of any merchandise by means of a game of chance, gift enterprise or lottery scheme.

"It Is Further Ordered that the respondent shall, within sixty (60) days after service upon it of this order, file with the Commission a report in writing setting forth in detail the manner and form in which it has complied with this order."

The candy company, petitioner herein, does not seriously (or at least persuasively) contend that the findings of the Commission are not sustained by the evidence and its admission, or that the cease and desist order issued against it is not "drawn to conform to the language approved by the courts". It says that it frankly admitted in its answer that it had formerly used such boards as were shown in evidence and the record shows that it offered no evidence that it had ever discontinued such use. Neither did it specify in its very extended answer any particular date when it claims to have decided to, or when it claims that it did, discontinue to use the devices particularly described in the complaint as those which petitioner "has been or is using in the sale and distribution of candy by lot or chance". But the gist of the contention in this court is that the petitioner became apprised by holdings of the Commission and the courts on cases appealed "that the use of punchboards generally, where they were a part of a scheme to sell the concern's own candy, would be held to be unfair trade practice", and that it had accordingly adopted a new punch board method, free from offense against the Act, which it had described in its answer. The gist of the distinction between the devices particularly described in the complaint against the candy company and those which the company described with great elaboration in its answer is that the former carried legends and directions to the effect that the candy on which the chance to win was given was Douglas candy, whereas the new devices were entirely blank as to the make of the candy and the name Douglas nowhere appeared thereon. Petitioner complains here that the Commission did not make specific findings in respect to the new method and did not prohibit the new method with particularity in the cease and desist order. It is argued that the complaint and findings "refer only to the old type of punchboard" and petitioner says it might conclude on advice of counsel that the cease and desist order was intended to "refer only to the same type of board" which it had previously used, but petitioner would incur "hazard of being prosecuted". It urges that legal technicalities be overlooked and that this court pass upon the

"new type of punchboard which in no way refers to the Douglas Candy Company by name," and hold it to be beyond the power of the Commission to prohibit.

■ There is no merit in the contention that the Commission did not pass upon and indicate the intent of its order with respect to petitioner's alleged "new type of device" used for selling its candy. The complaint charged that the accused "distributes and has distributed various push cards and punch boards for use in the sale and distribution of its candy to the consuming public by means of a game of chance, gift enterprise or lottery scheme", and it was expressly asserted that the particular descriptions given in the complaint did not include all of the details. In the light of petitioner's answer, setting up an alleged new method, the Commission received in evidence on the hearing Exhibit 6, a punch board or push board for selling candy bars which exemplifies all petitioner's claimed novelty of method. The device carries no reference to Douglas Candy Company or its product and refers only to "bars" to be given in amounts dependent upon chance. The Commission described the device exemplified by Exhibit 6 and its use by the company with particularity in its findings, and found such use to be typical of the company's method. Manifestly, therefore, the cease and desist order forbids it.

■ As to petitioner's argument that its use of the devices which do not bear its name ought not to be prohibited as unfair competition: Conceding as it must, in the light of Federal Trade Commission v. R. F. Keppel & Bro., 291 U.S. 304, 54 S.Ct. 423, 78 L.Ed. 814, that the advantages it took of the element of chance by use of its old boards resulted in unfair competition within section 5 of the Federal Trade Commission Act, 15 U.S.C.A. § 45, when its devices carried its name and specified its candies, petitioner argues that a different result should follow on the omission of its name from the devices. It is pointed out that the retailer is now left entirely free to make his "pay-off" to the players in any make of candy, so that whatever advantage there may be in stimulating sales may now inure to all candy bar producers alike.

The argument is elaborated not without ingenuity and if it could be believed that the petitioner is distributing its devices for the common stimulation of the candy bar trade in general, with no special advantage to itself, it might well follow that nothing but the gambling laws could be invoked against it. But it was in evidence that salesmen from the company called on retail dealers when soliciting orders for Douglas candy and urged them to use the punch boards to augment their sales. Bearing in mind that competing companies refrain entirely from making any use of methods involving a game of chance, or lottery scheme, or any method contrary to public policy, we cannot doubt that the real intent and the inevitable effect of petitioner's method and practices is to connect up its customers to some extent at least with its methods. There was satisfactory proof that even under the system of petitioner where its devices were plainly marked "Douglas bars only", its dealers could and sometimes did pay off in candy bars of other makes. Liberality astonishing to conventional traders often marks the operations of games of chance. But the retailer who has his price and profit set up adjusted to make his money out of the Douglas candy sold by use of the Douglas devices could pretty safely be relied on, by and large and in the main, to pass out the candy that comes with the device, and there is no doubt that the petitioner carries on its business in that reasonable expectation. The essence of all of petitioner's unfair methods of competition by its use of gambling devices for selling its make of candy was sufficiently alleged in the complaint and established by the admissions and evidence. The Commission properly embraced them all in its cease and desist order. Hill et al. v. Federal Trade Commission, 5 Cir., 124 F.2d 104, decided December 23, 1941. See National Candy Co. v. Federal Trade Commission, 7 Cir., 104 F.2d 999; Ostler Candy Co. v. Federal Trade Commission, 10 Cir., 106 F.2d 962; Federal Trade Commission v. Martoccio Co., 8 Cir., 87 F.2d 561; Arkansas Wholesale Grocers' Ass'n v. Federal Trade Commission, 8 Cir., 18 F.2d 866, 871.

The order is affirmed.