## FEITLER v. HARRISON.

### No. 7802.

Circuit Court of Appeals, Seventh Circuit.

Feb. 18, 1942.

Rehearing Denied April 4, 1942.

Morton J. Harris, of Chicago, Ill., and Jacob Rabkin and Mark Johnson, both of New York City, for appellant.

Samuel O. Clark, Jr., Asst. Atty. Gen., J. E. Garvey, J. Louis Monarch, and Gerald L. Wallace, Sp. Assts. to Atty. Gen., and J.

Albert Woll, U. S. Atty., of Chicago, Ill., for appellee.

Before EVANS, SPARKS, and MINTON, Circuit Judges.

MINTON, Circuit Judge.

Appellant is a manufacturer of punchboards and push cards. Such as he manufactures are used for gambling purposes only. A sum of money is paid for the privilege of punching a number out on the punchboard. If the party is lucky and gets the right number, he gets back in merchandise or money more than he paid for the privilege of punching. The push card has one lucky number that is awarded the prize in money or merchandise after all the numbers are pushed off the card, at which time the lucky number concealed at the top of the push card is exposed to determine which was the lucky number.

Appellant between April 1, 1935 and June 30, 1938 sold these punchboards and push cards to purchasers all over the United States, who were classified on his books as retailers, operators, jobbers and manufacturers. On these sales, an excise tax of ten per cent was added to the purchase price and passed on to the purchaser. The tax thus collected was paid by the appellant to the appellee, who was Collector of Internal Revenue for the First District of Illinois. Appellant sought the return of the tax thus paid on the ground that his merchandise did not come within the statute. The claim as originally filed with and denied by the appellee covered sales to all four classifications of retailers, operators, jobbers and manufacturers, and amounted to $175,221.53. In the suit in the District Court to recover on this claim which had been denied by the appellee, the appellant reduced his claim to cover only retailers and operators, in the sum of $24,266.68. The District Court denied the claim and entered judgment for the appellee.

We are presented with two questions on this appeal. First, were the boards and push cards "games and parts of games" within the meaning of Section 609 of the Revenue Act of 1932, Chap. 209, 47 Stat. 264, 26 U.S.C.A. Int.Rev.Acts, page 612; and second, did the appellant as a condition precedent to his right to recover the tax alleged to be erroneously collected discharge his burden under Section 621(d) of the Revenue Act of 1932, 47 Stat. 268, cf. 26 U.S.C.A. Int.Rev.Code, § 3443(d), of showing that he had filed with the Commissioner written consent of the ultimate purchaser to the allowance of the credit or refund?

The pertinent provisions of the statute read as follows:

"§ 609. *Tax on Sporting Goods.*

"There is hereby imposed upon the following articles, sold by the manufacturer, producer, or importer, a tax equivalent to 10 per centum of the price for which so sold: Tennis rackets, tennis racket frames and strings, nets, racket covers and presses, skates, snowshoes, skis, toboggans, canoe paddles, polo mallets, baseball bats, gloves, masks, protectors, shoes and uniforms, football helmets, harness and uniforms, basketball goals and uniforms, golf bags and clubs, lacrosse sticks, balls of all kinds, including baseballs, footballs, tennis, golf, lacrosse, billiard and pool balls, fishing rods and reels, billiard and pool tables, chess and checker boards and pieces, dice, games and parts of games (except playing cards and children's toys and games); and all similar articles commonly or commercially known as sporting goods."

"§ 621 * * * (d) No overpayment of tax under this title shall be credited or refunded * * * in pursuance of a court decision or otherwise, unless the person who paid the tax establishes * * * (2) that he has repaid the amount of the tax to the ultimate purchaser of the article, or unless he files with the Commissioner written consent of such ultimate purchaser to the allowance of the credit or refund."

The appellant relies upon the consent provision in the last clause.

The District Court filed its findings of fact and stated its conclusions of law thereon. Findings 21, 22 and 23, which present the substantial questions on this appeal, read as follows:

"21. The plaintiff has failed to establish by a fair preponderance of the evidence that the articles with respect to which the taxes were imposed were not games or parts of games within the meaning of Section 609 of the Revenue Act of 1932.

"22. The plaintiff has failed to establish by a fair preponderance of the evidence that it has secured from the ultimate purchasers of the articles with respect to which the taxes were imposed, or filed with the Commissioner the written consents of such ultimate purchasers to refund of the taxes herein sought to be recovered.

"23. The punch boards, punch cards and other products so manufactured and sold by

plaintiff are primarily designed and intended for use in playing a game within the meaning of Section 609 of the Revenue Act of 1932."

Do these punchboards and push cards constitute "games and parts of games"? The District Court held they did. We think this question has been decided adversely to the Government and to the ruling of the District Court by the Supreme Court in White v. Aronson, 302 U.S. 16, 58 S.Ct. 95, 82 L. Ed. 20. In that case, the court had for consideration on certiorari to the Circuit Court of Appeals for the First Circuit the question of whether a jigsaw picture puzzle was a game or parts of games within the meaning of Section 609 of the Revenue Act of 1932. The lower court had held a jigsaw picture puzzle did not come within the statute. In defining what the statute meant, the Circuit Court said, 87 F.2d 272, 273:

"The section is headed 'Tax on Sporting Goods.' The articles or instrumentalities there specifically named are sporting goods whether they are used in connection with games or in some recreation or diversion other than a game. But the larger portion of the articles specifically named are all used in games of contest between two or more persons, and the question of construction is whether the articles or instrumentalities intended to be covered by the phrase 'games and parts of games' mean articles or instrumentalities used in games of contest like the specific articles previously named in the section, which are used in games of tennis, polo, baseball, etc., all of which involve a contest.

"We think this question requires an affirmative answer and that the words 'games and parts of games' bring into the list of taxables only such other articles as are used in games of contest, the same as those particularly named are and with which they are closely associated."

The Supreme Court, after setting out in its opinion the foregoing excerpt from the Circuit Court's opinion [302 U.S. 16, 58 S. Ct. 97, 82 L.Ed. 20], said: "The Circuit Court of Appeals rightly concluded that: 'The words "games and parts of games" bring into the list of taxables only such other articles as are used in games of contest, the same as those particularly named are and with which they are closely associated.' "[1]

These punchboards and push cards were gambling devices, pure and simple.

Their operation involves no contest, as anyone who has ever tried them can attest. The articles enumerated in the statute that precede the words "games and parts of games" give color and meaning to these words as do the words following them, namely, "all similar articles commonly or commercially known as sporting goods." The statute clearly contemplates games of contest wherein the preceding enumerated articles are known to be used and "all similar articles commonly or commercially known as sporting goods." The rule of ejusdem generis is applicable here.

The rule is well established that where there is reasonable doubt as to the meaning of a tax statute, it should be construed most favorably to the taxpayer. Gould v. Gould, 245 U.S. 151, 38 S.Ct. 53, 62 L.Ed. 211.

We therefore hold that punchboards and push cards are not "games and parts of games" within the meaning of the Act.

We come to the second question: Did the appellant discharge his burden of establishing under Section 621(d) that he had filed with the Commissioner written consent of the ultimate purchaser?

The appellant, to consummate his plan to recover the tax erroneously paid, wrote to each of his customers an identical letter which advised them the appellant was going to file and prosecute a claim to recover the tax (which tax had been passed on to the customer), that if the customer would sign the enclosed consent and return it and if the claim was successfully prosecuted, after expenses were deducted the net amount recovered would be divided evenly between the appellant and the customer.

Retailers, operators, jobbers and manufacturers were all solicited for their consent. Some 1,285 responses with the purported consent signed were received. How many were from jobbers and manufacturers does not appear, but the appellant admits that they were not ultimate purchasers.

A claim covering the amount of goods sold from April 1, 1935 to June 30, 1938 to each customer who responded to the letter soliciting the consent was filed with the Collector in one large claim covering twelve hundred customers, and a supplemental claim covering eighty-five customers. The purported consents, totaling 1,285, were also filed with the Collector.

[1] Congress has resolved this difficulty by eliminating the words "games and parts of games" from this section of the statute. 26 U.S.C.A. Int.Rev.Code, § 3406(a) (1).

The authenticity of the letters purporting to give consent was not established except as they came back signed by someone for the customer in response to the form letter of solicitation from the appellant. The essential fact that the signer of the purported consent was the ultimate purchaser was not established by any evidence except the self-serving declaration contained in the letters, which recited that the signers were the ultimate purchasers, and the statement of the office and credit manager of the appellant that she had classified the customers as retailers, operators, jobbers and manufacturers from the reports of the salesmen and by reference to Dun and Bradstreet as to the kind of business they were engaged in, and from this classification and without any personal knowledge as to how the customers operated or who was the ultimate purchaser, she assumed that they were the ultimate purchasers. She classified one a retailer if the salesmen's reports designated him as such and Dun and Bradstreet showed him to be engaged in the operation of a retail establishment of some kind. An operator was classified as one who purchased punchboards and push cards and put them in other people's stores on a commission basis, but she did not know whether the operator sold any of these boards or not.

We do not think the authenticity of the purported consents was shown or that the evidence was sufficient to show that the purported consents were signed by the ultimate purchaser. Finding 22 of the court was warranted on the appellant's failure to sustain the burden in this respect.

The appellant saved exceptions to the introduction by the Government of four signed statements of four of appellant's customers which contradicted the statement contained in the so-called consent letters purporting to come from them, in which it was recited that they were the ultimate purchasers. Even if these statements were not admissible, the appellant cannot complain since the evidence without these objectionable statements was not sufficient to sustain the burden resting upon him. The sum of the evidence in the case, without the introduction of these statements objected to, was not sufficient to sustain the burden resting upon the appellant. Since these statements objected to, if given any effect, were for the purpose of detracting from the strength of evidence not sufficient as a whole, it is apparent that the admission of the statements objected to could not harm the appellants.

Furthermore, the evidence objected to was of equal dignity with the evidence relied on by the appellant, namely, the unauthenticated so-called consent letters, which the evidence objected to was intended to answer.

The appellant having failed to sustain the burden cast upon him by Section 621(d) must fail in this appeal, and the case is affirmed.