**MALTZ v. SAX et al.**

No. 8096.

Circuit Court of Appeals, Seventh Circuit.

Feb. 26, 1943.

Rehearing Denied March 27, 1943.

Myer N. Rosengard, of Chicago, Ill., for appellant.

Claude A. Roth, Harry E. Smoot, and James A. O'Callaghan, all of Chicago, Ill., and Arnold L. Guesmer, of Minneapolis, Minn., for appellees.

Before EVANS, MAJOR, and MINTON, Circuit Judges.

EVANS, Circuit Judge.

This action was brought to recover treble damages from defendants who allegedly have combined and conspired in violation of Section 1, Title 15, U.S.C.A. (commonly known as the Sherman Anti-Trust Act, as amended by the Clayton Act), to restrain commerce. Plaintiff asserts that he is the victim of said unlawful combination and conspiracy on the part of the defendants and has been damaged in the sum of $15,-000, which should be multiplied three times as authorized by Section 15 of this Title. (Sec. 15, Title 15 U.S.C.A.)

Defendants moved to dismiss the complaint on the ground that plaintiff's sole business is the manufacture and sale of gambling devices, the use and sale of which are against public policy and unlawful.

That which plaintiff makes and sells, and which came into competition with defendants' product and methods of business, is called by plaintiff "sale boards," and by defendants "punchboards." Such a board is shown in the exhibit attached to the

affidavit supporting defendants' motion to dismiss.

Its "E-Z Pickin'" board contains 2400 holes. Each punch is sold for 50¢. Of the 2400 tickets, only 109 are winners, entitled to cash awards ranging from 50¢ to $50. The remaining 2,291 purchasers of tickets receive nothing.

This court had occasion recently to describe a board similar to plaintiff's. In Feitler v. Harrison, 7 Cir., 126 F.2d 449, 451, we had before us the application of a tax statute on sporting goods. Our query was,—Were the punchboards subject to the tax? We held they were not sporting goods. We said: "These punchboards and push cards were gambling devices, pure and simple. Their operation involves no contest, * * *."

■ In the case of Keogh v. Chicago & Northwestern R. Co., 260 U.S. 156, 163, 43 S.Ct. 47, 49, 67 L.Ed. 183, the court was speaking of Section 7 of the Anti-Trust Act, which gives the right of action to one who has been injured in his business or property. It there said: "Injury implies violation of a legal *right*."

Our question is whether one engaged in the business of making and selling gambling devices, the use of which is against public policy and unlawful, may recover damages under the Sherman Anti-Trust Act for a "violation of his legal *right*." In other words, has he "a legal right" in a business which is limited to making and selling gambling apparatus?

■ Assuming as we do that the Anti-Trust Act was enacted to protect the public by preventing restraints on commerce and, generally speaking, was a public benefit measure, it still seems rather paradoxical to permit plaintiff to invoke its protection for a business, the practice of which is against public policy, if not illegal.

Plaintiff comes within the protection of the language of Section 15, Title 15,—being "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws" etc. Yet he invokes this statute to encourage the conduct of a condemned type of business, to-wit, gambling.

■ In disposing of this question, we assume that this Federal statute was enacted to protect the public, and this was its sole purpose. It is true, it gave one injured through an unlawful combination or conspiracy, a cause of action. This grant to persons damaged—a cause of action for treble damages—was for the purpose of multiplying the agencies which would help enforce the Act and therefore make it more effective.

All of the provisions and purposes of this Act must be construed together, with its main purpose that of protecting the public against restraints of commerce, clearly its major object.

Our task is to reconcile two conflicting government activities. We are to reconcile the obvious effort, in Section 15, to make more certain the enforcement of the Anti-Trust Act and thereby protect the public, with the suppression of unfair business methods practiced by those who adopt gambling devices as a means of fostering or building up a business.

It may be true that neither the manufacture of gambling devices, nor their sale, is specifically prohibited by Federal statute. But their use has uniformly met with the condemnation of Federal courts where the Federal Trade Commission sought to prevent their use, as violative of the Federal Trade Act. Federal T. C. v. R. F. Keppel & Bro., 291 U.S. 304, 54 S.Ct. 423, 78 L.Ed. 814; Ostler Candy Co. v. Federal T. C., 10 Cir., 106 F.2d 962; National Candy Co. v. Federal T. C., 7 Cir., 104 F.2d 999; Ardelle, Inc., v. Federal T. C., 9 Cir., 101 F.2d 718; Chicago Silk Co. v. Federal T. C., 7 Cir., 90 F.2d 689; Hofeller v. Federal T. C., 7 Cir., 82 F.2d 647; Federal T. C. v. A. McLean & Son, 7 Cir., 84 F.2d 910; Federal T. C. v. F. A. Martoccio Co., 8 Cir., 87 F.2d 561; Douglas Candy Co. v. Federal T. C., 8 Cir., 125 F.2d 665; Koolish v. Federal T. C., 7 Cir., 129 F.2d 64.

In other words, Congress has condemned unlawful combinations and conspiracies to restrain trade. It has also created the Federal Trade Commission to destroy unfair and against-public-policy business practices which include the use of gambling machines.

■ Moreover, in the absence of any statute condemning gambling as illegal, the Federal courts have consistently condemned it as against public policy.[1] In some of its phases it has been condemned as illegal.

[1] Continental Wall Paper Co. v. Louis Voight & Sons Co., 212 U.S. 227, 29 S.Ct. 280, 53 L.Ed. 486.

■ While the antitrust statute is for the public benefit and its provision which gives to one damaged by an unlawful combination, three times his actual pecuniary loss, his action to recover those damages is personal and for his own benefit. It is not one for the benefit of the public. He must show personal, pecuniary damages. He can only recover his actual damages. Without actual damages to him, there can be no recovery. While this right of the injured party to recover damages was intended to provoke greater respect for the Act, the individual's cause of action is personal and dependent solely upon a showing of actual damages to his business or property.[2]

■ Our conclusion is that, for two reasons, plaintiff can not recover: First, it comes into court with unclean hands; second, it has no legal right, for the violation of which it may recover damages because of defendants' combination in violation of Section 15 of the Sherman Anti-Trust law.

As to unclean hands: The maxims of equity are available as defenses in actions at law (28 U.S.C.A. § 398; Rule 2 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c).

■ Equally clear are the holdings that the defense of unclean hands need not be raised by the litigants. The courts will do so of their own motion. Bentley v. Tibbals, 2 Cir., 223 F. 247; American Ins. Co. v. Lucas, D. C., 38 F.Supp. 926.

■ The rule laid down in Keystone Driller Co. v. General Excavator Co., 290 U.S. 240, 245, 54 S.Ct. 146, 78 L.Ed. 293, to the effect that there must be a relation between the unclean hand act and the relief sought, before the court will bar recovery, has an exception, illustrated by the case of Morton Salt Co. v. G. S. Suppiger, 314 U.S. 488, 490, 62 S.Ct. 402, 86 L.Ed. 363. Where plaintiff's action is condemned by statute, or is against public policy, and the right sought to be vindicated is inimical to public welfare, the defense of unclean hands is available even though there be no relation between the suitor's unclean hands act and the relief sought.

It may be as well, or better, to state as the ground for denying judgment to plaintiff in this law action, that he was in *particeps criminis* with those who bought his gambling devices. Rather than to say relief is denied because he comes into court with unclean hands, he asks damages for a business that makes him a criminal partner to gamblers and his part is to aid a gambling business. Therefore, though his making and sale of punch boards may not be gambling, his status is fixed by his inseparable connection with the gambling business, and he will be left where he placed himself,—not entitled to judicial assistance.

The second reason for the same conclusion is to be found in the fact that the damages claimed were for an injury to something which the law did not recognize as a legal right. Plaintiff's business was the making and selling of goods which could only be used by purchasers in furtherance of the business of gambling. Plaintiff has no legal right in a business, the conduct of which was gambling, for which he may obtain protection either in an action at law, or by a suit in equity. He had no legal rights to protect. Therefore defendants could not invade them.

It would be a refinement of distinction to hold that the public may be protected against the business of gambling, but the business of making machines usable only in gambling falls outside the pale of condemned action. We find that most courts have refused to make the distinction. They have condemned gambling and gambling transactions. While the business of making and selling gambling machines is not in itself gambling, it is widely held that one who sells a gambling mechanism, useful for no business other than gambling, may not recover the purchase price of such gambling apparatus. Hatton v. Casey, 93 Ind.App. 336, 178 N.E. 303; George v. Wm. C. Johnson Candy Co., 19 Ohio App. 137; Advance Whip & Novelty Co. v. Benevolent Order of Elks, 106 Vt. 72, 170 A. 95; Commonwealth v. Lansdale, 98 Ky. 664,

---

[2] Keogh v. Chicago & N. W. R. Co., 7 Cir., 271 F. 444; Moore v. Backus, 7 Cir., 78 F.2d 571, 101 A.L.R. 279; Locker v. American Tob. Co., 2 Cir., 218 F. 447; Carbonic Gas Co. v. Pure Carbonic Co., D.C., 4 F.Supp. 992; Motion Picture Patents Co. v. Eclair Film Co., D.C., 208 F. 416; Thomason v. United Gas Public Service Co., D.C., 8 F.Supp. 14; Sullivan v. Associated Billposters, D.C., 272 F. 323; Shurtz v. Foster & Kleiser Co., D.C., 29 F.Supp. 162. See also, United States v. Cooper Corp., 312 U.S. 600, 61 S.Ct. 742, 85 L.Ed. 1071.

34 S.W. 17; Mills Novelty Co. v. King, 174 Ill.App. 559; Miller v. Chicago & N. W. Ry. Co., 153 Wis. 431, 141 N.W. 263, 45 L.R.A.,N.S., 334, Ann.Cas.1914D, 632; Hanauer v. Doane, 79 U.S. 342, 12 Wall. 342, 20 L.Ed. 439; American Jurisprudence, "Gaming and Prize Contests," Sec. 65.

More consistent with our general public policy is a construction of the Sherman Act, which holds that one conducting a business inseparably connected with gambling (such as making gambling machines) may not recover in an action at law for injury to its business through a competition-squeezing combination of his competitors.

The judgment is affirmed.