HEALTH CORPORATION OF
AMERICA, INC., et al.

v.

NEW JERSEY DENTAL ASSOCIATION
et al.

Civ. A. No. 75–2022.

United States District Court,
D. New Jersey.

Jan. 5, 1977.

Bruce K. Cohen, Meredith & Cohen, Philadelphia, Pa., Peter R. Thorndike, Wallace, Mariano, Thorndike & Brennan, Camden, N. J., for plaintiffs.

Arthur C. Meisel, Jamieson, McCardell, Moore, Peskin & Spicer, Trenton, N. J., for defendants.

OPINION

BROTMAN, District Judge.

The issue before the court is whether plaintiffs' violation of New Jersey statutes precludes them from maintaining this antitrust action.

Plaintiffs are Health Corporation of America, Inc. (hereinafter Health Corp.) and its wholly owned subsidiaries North American Dental Plans, Inc., a New Jersey Corporation (hereinafter North American of New Jersey) and North American Dental Plans, Inc., a Pennsylvania Corporation (hereinafter North American of Pennsylvania). The parent corporation supplies managerial and executive services for its wholly owned subsidiaries as well as independent entities. The subsidiaries design and administer dental health programs for groups such as unions. They enter into agreements with various dentists in the state of New Jersey and elsewhere whereby such dentists agree to provide professional services for group members. They have brought this action under sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15, 26, to recover for alleged violations of sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2.

Defendants are New Jersey Dental Association, Mercer Dental Society, Southern

Dental Society of the state of New Jersey, and New Jersey Dental Service Plan (hereinafter DSP), not-for-profit corporations involved in the operation of dental health plans in the state of New Jersey. Also named as defendants are several individuals who are present or former officers of the corporate defendants.

Plaintiffs allege that the defendants have conspired to restrain trade in the provision of health care programs and benefits in violation of section 1 of the Sherman Act by instituting sham lawsuits and regulatory board proceedings, and by using threats, harassment, coercion and the dissemination of misinformation to induce dentists not to contract with plaintiffs. It is alleged that these acts also constitute a conspiracy to monopolize and the monopolization of the delivery of dental health care programs in violation of section 2 of the Sherman Act, tortious interference with plaintiffs' business, and violations of sections 3 and 4 of the New Jersey Antitrust Act, N.J.S.A. §§ 56:9–3, 56:9–4 (1970).

This case is presently before the court on defendants' motion to dismiss under rule 12(b)(6) for failure to state a claim upon which relief may be granted. Defendants allege that plaintiffs lack standing under sections 4 and 16 of the Clayton Act because their business or property is not worthy of legal protection. Defendants' motion is not brought properly under rule 12(b)(6) which mandates the making of such a motion "before pleading if a further pleading is permitted." Defendants have already answered and filed an earlier motion for partial summary judgment which was denied. The fact that matters outside the pleadings must be considered in deciding the motion also precludes the use of 12(b)(6). The court, therefore, will treat the motion as one for summary judgment and dispose of it in accordance with rule 56. Fed.R.Civ.P. 12(b).

The bases for defendants' motion are decisions by the Superior Court of New Jersey and the New Jersey State Board of Dentistry finding plaintiffs in violation of certain New Jersey statutes. Defendant DSP instituted suit against North American of New Jersey and North American of Pennsylvania in the Superior Court of New Jersey for operating a dental service plan in violation of the Dental Service Corporation Act of 1968, N.J.S.A. §§ 17:48C–1 to 48C–36 (1968). The court held that the activities of plaintiffs were covered by the statute and were illegal. *New Jersey Dental Service Plan, Inc. v. North American Dental Plans, Inc.*, Docket No. C2256–74 (Sup.Ct. N.J., Oral Opinion delivered April 30, 1976). This decision is presently on appeal. In an administrative proceeding, the New Jersey State Board of Dentistry concluded that North American of New Jersey was engaged in the practice of dentistry in violation of the Dental Practice Act, N.J.S.A. §§ 45:6–1 to 6–47 (1963). Plaintiff and the Board entered into a consent order and settlement in which plaintiff agreed to pay $50,000 and to modify its operations; and, the Board agreed to forego instituting judicial action to compel compliance with the provisions of the statute.[1]

Defendants contend that plaintiffs cannot seek the protection of the antitrust laws for a business which has been conducted in violation of New Jersey law. Although defendants characterize their basis for dismissal as a lack of standing on the part of plaintiffs, the thrust of their argument is that plaintiffs' illegal activities preclude them from enforcing the antitrust laws. They argue, in effect, that plaintiffs come into court with unclean hands, that plaintiffs' failure to comply with statutory requirements is a defense to any antitrust violations defendants may have committed. No matter how defendants classify their contentions, the Supreme Court cases of *Kiefer-Stewart Co. v. Joseph E. Seagram & Sons, Inc.*, 340 U.S. 211, 71 S.Ct. 259, 95 L.Ed. 219 (1951) and *Perma Life Mufflers, Inc. v. International Parts Corp.*, 392 U.S. 134, 88 S.Ct. 1981, 20 L.Ed.2d 982 (1968)

---

1. In the Matter of the Practice of Dentistry in the State of New Jersey by North American Dental Plans, Inc., Settlement, Consent and Order (June 2, 1976).

must remain a starting point.[2] In *Kiefer*, defendants introduced evidence that plaintiff had agreed with other wholesalers to set minimum prices for the sale of liquor in violation of the antitrust laws. The Supreme Court held that this was no defense to defendants' own illegal conduct. "If [plaintiff] and others were guilty of infractions of the antitrust laws, they could be held responsible in appropriate proceedings brought against them by the Government or by injured private persons." *Id.*, 340 U.S. at 214, 71 S.Ct. at 261. In *Perma*, plaintiffs were dealers who operated Midas Muffler Shops. They brought suit against Midas, Inc. and its subsidiaries, alleging that the sales agreements which they had made with defendants were in violation of the antitrust laws. The district court held plaintiffs' claims barred by the doctrine of *in pari delicto*. The court of appeals affirmed because plaintiffs had voluntarily entered into the franchise agreements which they were now challenging. The Supreme Court reversed:

> [T]he purposes of the antitrust laws are best served by insuring that the private action will be an everpresent threat to deter anyone contemplating business behavior in violation of the antitrust laws. The plaintiff who reaps the reward of treble damages may be no less morally reprehensible than the defendant, but the law encourages his suit to further the overriding public policy in favor of competition. A more fastidious regard for the relative moral worth of the parties would only result in seriously undermining the usefulness of the private action as a bulwark of antitrust enforcement. And permitting the plaintiff to recover a

windfall gain does not encourage continued violations by those in his position since they remain fully subject to civil and criminal penalties for their own illegal conduct. *Id.*, 392 U.S. at 139, 88 S.Ct. at 1984.

Defendants' argument in the case at bar is less compelling than that of the defendants in *Kiefer* and *Perma*. Plaintiffs in those cases were guilty of the same type of anti-competitive activity with which defendants were charged. The Supreme Court, nevertheless, was unwilling to insulate those defendants from the effect of the antitrust laws. Here, plaintiffs have been found to be in violation of regulatory statutes unrelated to the strong national policy of encouraging private enforcement of the antitrust laws. The New Jersey Dental Service Corporation Act and the Dental Practice Act contain their own procedures for enforcement which have been utilized in this case. Plaintiffs have paid $50,000 and restructured their operations to comply with the administrative decision. Further changes may have to be made as a result of the decision of the Superior Court of New Jersey. Defendants are not saying that they are innocent of antitrust violations. Instead, they are contending that whether or not they have monopolized the delivery of dental health care programs in the state of New Jersey, plaintiffs should not be allowed to recover. Dismissal would increase the penalties which the state legislature has seen fit to include in the statutory scheme and would greatly frustrate the private enforcement of the antitrust laws.

Defendants cite several cases in support of their position. Only two are worthy of discussion and they can be distinguished.[3]

**2.** *See also Richard L. Frost v. Shipowners & Merchants Towboat Co.*, 1974–1 CCH Trade Cases ¶ 75–121 (N.D.Cal.1974) (defendants' characterization of their claim to avoid the thrust of *Kiefer* and *Perma* is unsuccessful); *Waldron v. British Petroleum Co., Ltd.*, 231 F.Supp. 72, 92 (S.D.N.Y.1964) (a reformulation of defendants' defense does not change the substance of the matter).

**3.** The court agrees with plaintiffs that *Okefenokee Rural Electric Membership Corp. v. Florida Power and Light Co.*, 214 F.2d 413 (5th Cir.

1954) is more properly a government action case within the meaning of *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). *See American Bar Association, Antitrust Law Developments*, 408 n. 123 (1975). *Martin v. Phillips Petroleum Co.*, 365 F.2d 629 (5th Cir.), *cert. denied*, 385 U.S. 991, 87 S.Ct. 600, 17 L.Ed.2d 451 (1966), *rehearing denied*, 386 U.S. 930, 87 S.Ct. 851, 17 L.Ed.2d 804 (1967), primarily dealt with the degree of preparation to enter a business needed to invoke the protec-

In *Maltz v. Sax*, 134 F.2d 2 (7th Cir. 1943), the court dismissed plaintiff's private antitrust action on the ground that plaintiff's sole business was the manufacture and sale of gambling devices, which was unlawful and against public policy. The *Maltz* situation is very different from the case at bar. The administration of dental health care programs is not criminal or contrary to public policy. Plaintiffs Health Corporation and North American of New Jersey can bring their activities within the law with some operational changes. The *Maltz* plaintiff was engaged in an inherently illegal business. We think *Maltz* should be limited to its facts. *See Richard L. Frost v. Shipowners & Merchants Towboat Co.*, 1974–1 CCH Trade Cases ¶ 75–121 (N.D.Cal. 1974). Some of the broad language which appears in the court's opinion is suspect in light of the later *Kiefer* and *Perma* decisions by the Supreme Court.

Defendants' reliance on *Turner v. American Bar Association*, 407 F.Supp. 451, 479–80 (N.D.Tex.1975) is misplaced. Plaintiffs in that case sued various members of the federal judiciary, the American Bar Association, and others, alleging violations of the antitrust and civil rights laws. At the core of their case was the claim that there is a constitutional right to have unlicensed lay counsel represent one in court. The court rejected this claim and dismissed the antitrust counts because of plaintiffs' failure to "demonstrate that there is in fact any property or business, present or future, that is deserving of legal protection." Plaintiffs in the case at bar are not contending that they have a right to operate without complying with New Jersey statutes. On the contrary, they are attempting to comply with the decision of the administrative agency and are appealing the decision of the Superior Court. In his opinion, Judge Lenox recognized the possibility of plaintiffs' re-

structuring their operations to come within a statutory exemption if his decision is sustained on appeal. *New Jersey Dental Service Plan, Inc.*, Oral Opinion at 57. The *Turner* decision, therefore, is not inconsistent with a denial of defendants' motion in this case.

The Tenth Circuit has decided a case factually very similar to the one before the court. *Semke v. Enid Automobile Dealers Association*, 456 F.2d 1361 (10th Cir. 1972). A used car dealer brought a private antitrust action against franchised new car dealers who allegedly conspired to prevent plaintiff from furnishing new cars to customers. Defendants asserted as a defense plaintiff's noncompliance with an Oklahoma licensing statute. The Oklahoma Supreme Court had affirmed the entry of an injunction restraining plaintiff from selling new cars without a license. The court of appeals rejected the defense. It held that the licensing statute in question did not qualify as a state exemption under *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943) and *Eastern Railroad Presidents Conference v. Noerr Motor Freight*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961). Nor did the doctrine of *in pari delicto* or contributory illegality aid the defendants. *Id.* at 1367–70. Defendants argue that *Semke* did not discuss whether plaintiff suffered an injury to its business or property within section 4 of the Clayton Act. As was stated above, however, the substance of the claim is the same no matter what label is affixed. *See Calnetics Corp. v. Volkswagen of America, Inc.*, 532 F.2d 674, 688–89 (9th Cir. 1976); *Purex Corp., Ltd. v. General Foods Corp.*, 318 F.Supp. 322 (C.D. Cal.1970). Plaintiffs' claim will not be dismissed because they were in violation of state statutes. The state has enforced its statutes. This court will not impose an additional penalty.

---

tion of the antitrust laws. The contract involved was not considered "property" not only because invalid under Louisiana law but also because of other "infirmities." *Id.* at 634. Nor is *Lamp Liquors, Inc. v. Adolph Coors Company*, 410 F.Supp. 536 (D.Wyo.1976) persuasive. Most of the district court opinion discusses the

preeminence of state control over liquor sales by reason of the twenty-first amendment. The standing issue appears at the end of the opinion as an alternative ground of decision. *Martin v. Phillips Petroleum Co.*, discussed above, is the only case cited in support. We decline to follow the alternative holding of *Lamp Liquors*.

Defendants' motion to dismiss is denied. Counsel will submit the appropriate order.